NEILS HANSEN, APPELLEE, V. KAREN M. BERTHELSEN AND JAMES M. LOVE, APPELLANTS.

1. **Fraud:** CONVEYANCE BY UNDUE INFLUENCE. Undue influence exerted upon an uncle by his niece, by reason of which he conveyed to her certain real estate upon a promise to reconvey, may be sufficient to justify a court of equity in setting aside the deed.

2. **Trusts.** An express trust cannot be raised by a parol promise to reconvey real estate by the grantor.

3. **Fraud.** Where one of two innocent persons must suffer by the fraud of a third, he who trusted the third person and placed the means in his hands to commit the wrong must bear the loss.

4. **Vendor and Vendee :** RETENTION OF POSSESSION BY GRANTOR. Where a grantor remains in possession of real estate after

28

the execution of a warranty deed therefor, a party purchasing must ascertain by what right he retains possession. *McHugh v. Smiley,* 17 Neb., 620.

5.  Statute of Frauds: PLEADING. While the statute of frauds is so far personal that no one but the parties can in the first instance interpose it, yet when one of the parties conveys real estate absolutely by warranty deed, and thereby disaffirms the contract, his grantee may plead the facts as a defense.

APPEAL from Dodge county district court. Tried below before POST, J.

*N. H. Bell* and *Wm. Marshall,* for appellants.

*G. L. Loomis, W. H. Munger,* and *E. F. Gray,* for appellee.

MAXWELL, CH. J.

This action was brought in the district court of Dodge county by the plaintiff against the defendants, to quiet the title to the sw. ¼ of sec. 28, t. 18, r. 8, in the plaintiff, and to set aside a deed from defendant Berthelsen to Love, and compel him to convey to the plaintiff. On the trial of the cause in the court below a decree was rendered in favor of the plaintiff, the defendant Love being required to convey all' his interest in said land within twenty days and that he pay the cost of suit and be allowed only the taxes paid by him on said land—about $30.00. The defendant Love appeals.

The principal defense interposed by Love is the statute of frauds and that he is an innocent purchaser. The testimony tends to show that the land in question is situate about 4½ or 5 miles from Fremont; that the plaintiff purchased it in the year 1881; that the plaintiff is a native of Denmark, and in the spring of 1883 he with his wife went to Denmark on a visit, and Miss Berthelsen, a niece of his, returned with them in June, 1883. That after their return

they resided in Fremont during the remainder of the year 1883, Miss Berthelsen living with the plaintiff, but the wife leaving in October of that year. The plaintiff, in the autumn of 1883, was dealing in stock and frequently absent from home at night, and there seems to have been some difficulty between the plaintiff and his wife, caused, the plaintiff claims, by the machinations of Miss Berthelsen. Prior to the visit to Denmark, the plaintiff and his wife, having no children of their own, had obtained two boys, one six years of age and the other nine, from the Home of the Friendless in Chicago, and seem to have adopted them ; and the plaintiff made a will leaving the boys all his property in case of his death, except $1,000.

He testifies that after the return of the plaintiff and his wife to this country, Miss Berthelsen found fault with the boys, complained to him that he had a sufficient number of relatives of his own in needy circumstances, and induced him to send the boys away and destroy the will; that she found fault with his wife and misrepresented her, saying to him that "when strangers came around she (the plaintiff's wife) was better to them and took better care against them than she did against me when I got home, and there was a man always running around there more or less when I was away. She said he was a brick mason, a man of family, and a friend of mine. He had visited at my house before. She was telling me he was coming around there frequently."

Q. Did she tell you anything in regard to what your wife done—about there being anything wrong?

A. She was telling me that when I was away she was going out, and taking walks with him, and going to the restaurant, and so forth.

The result, as he testifies, was, that on or about the 10th of October, 1883, the plaintiff and his wife separated, he giving her a certain amount of property, and three or four days afterwards he claims that Miss Berthelsen induced

himself and wife to make a deed of the land to her.    He testified that, "We agreed to separate, and finally my wife she wanted to part.    We talked it over, and finally I agreed with her to pay her whatever she asked.    I paid my wife what she asked, and she went.    Miss Berthelsen said then to me, 'Well, uncle, you must, before Emma goes away' (that was my wife), 'you must get the land out of your name, and I don't think you can do it any better than to deed it over to me, because I am the only relation you have got here; you have no children or any relation; and whenever you have a chance to sell or rent it again yourself, I will be willing to deed it over to you.' Then we went over to Mr. ———'s office, and the deed was made.    I paid my wife.    She got her share that was agreed on in money.    It was agreed between me and her that I should retain the land.    What Miss Berthelsen said about making the deed to her was in reference to this same land, the Bellevue farm.    I did not at that time own any other land anywhere."

He also states that the suggestion to make the deed in question came from Miss Berthelsen, and that she induced him to make the deed.

He testifies, "In the first place she was my niece, and in the second place she promised me that she was willing to deed over to me or any one that I sold to," and that he would not have made the conveyance but for the fact of her relationship and her promise to reconvey, and that she paid no consideration whatever for the land.    If Hansen's testimony is to be believed, Miss Berthelsen had in some way acquired great influence over him, and in consequence of such influence obtained the deed in question.    This being so, there probably was sufficient evidence to justify the court in finding, as it must have done, that the deed was acquired by undue influence.    *Ashton v. Thompson*, 18 N. W. R., 918.    *Kleeman v. Peltzer*, 17 Neb., 381.    Pom. Eq., § 946.    *Munson v. Carter, ante* p. 293.

The evidence is not very satisfactory, however, and but. for the rule that a verdict or finding of a court will not be set aside unless it is clearly wrong, could not be sustained.

2d. The testimony shows that the land in question at the time the deed from the plaintiff to Miss Berthelsen was made, was worth about the sum of $5,000; that about the 1st of May, 1884, the plaintiff and his wife, who had become reconciled, moved on to the land, and that Miss Berthelson was then living with them; that on the 5th of May, 1884, school district No. 42, of Dodge county, conveyed to her one acre of land in said quarter section, and. on the 10th of May, 1884, she conveyed to said school district one acre of land in said quarter section; both of these deeds were recorded May 10th and 11th, 1884. About this time Miss Berthelsen appears to have left the residence of the plaintiff and found employment in Fremont. A few days after going to Fremont she applied to Love for a loan on the land, but as there was a purchase money mortgage for the sum of $1,500, and interest notes running for several years, in all about $2,700 given by the plaintiff to his grantor, Love refused to accept the security as satisfactory, and refused to make a loan thereon. She then proposed to sell the land to him, and after several conferences she accepted his offer of $1,000 for the land subject to the mortgage. She informed him that Hansen had rented the land of her for that year, and the testimony shows he was then living on and cultivating the same. Love did not see Hansen while the negotiations for the purchase of the land were pending, but did see him in a few days afterwards and informed him of the purchase, at which he seems to have expressed some surprise. The testimony shows that Miss Berthelsen made a deed to Love for the land in question with the usual covenants of warranty and against incumbrances, except the mortgage heretofore mentioned and taxes due on the property; that Love gave her

a check on one of the banks in Fremont for $1,000, which money she drew from the bank and left almost immediately for Denmark; that the plaintiff, according to his own testimony, knew of her unreliable character for several months before she left, but seems to have made no effort to secure the title from her. The testimony also shows that Love had no intention to defraud Hansen, and had no knowledge of his interest in the premises except that derived from his residence on the land and the statement of Miss Berthelsen. There is no doubt he believed her statement and acted in the utmost good faith. The price, although considerably less than the actual value of the property, was not so disproportioned as of itself to be evidence of bad faith, and but for the fact that the plaintiff lived upon the land, claiming to be the owner thereof, Love's title would be perfect.

Some doubt has been expressed as to the application of the rule as to notice where a grantor continues to hold possession after the delivery of his deed, but in our view there is no reason for a distinction—the question in both cases is, by what right is he in possession? *McHugh v. Smiley*, 17 Neb., 620–630. *McKinzie v. Perrill*, 15 O. S., 168. *Grimstone v. Carter*, 3 Paige, 421. *Hopkins v. Garrard*, 7 B. Mon., 312. *Berryhill v. Kirchner*, 96 Penn. St., 489. *Pell v. McElroy*, 36 Cal., 268. *Ill. Cent. R. R. Co. v. McCullough*, 59 Ill., 166. The plaintiff, however, had placed the apparent ownership of the land in Miss Berthelsen, and permitted her to retain it after he had reason to believe according to his own testimony that she was not reliable. As between Love and the plaintiff the latter was most to blame, as he had placed in the hands of another the means for perpetrating a fraud and permitted such means to remain in her hands after he knew, or had reason to know, that the power was liable to be abused, hence the equity of Love, for the money paid by him is superior to that of the plaintiff. *Rice v. Rice,*

2 Drew., 73. *Loveridge v. Cooper*, 3 Russ., 30. *Anketel v. Converse*, 17 O. S., 11. *Resor v. O. & M. R. R. Co.*, 17 O. S., 139. In the case last cited the vendor put the vendee in possession and placed in his hands a deed of the land sold, with an agreement that it should not be considered delivered or become effectual until the purchase money was paid. The vendee subsequently put the deed on record without paying the purchase price, and mortgaged the lands to *bona fide* mortgagees for value and without notice. The court held that as against the mortgagees the vendor could not assert a claim to the land. It is said (page 142): " By *his own acts*, in putting the land and the deed of conveyance therefor into the possession of the company, he has plainly said to the world that the company was the *owner* of the land and might be dealt with as such." The rule in equity is, that where one of two innocent parties must suffer by a wrong of a third, he who by his negligence or undue confidence has been the means by which the other has been deceived must bear the loss. *Selser v. Brock*, 3 O. S., 302. *Palmer v. Dodge*, 4 O. S., 21. *Fullerton v. Sturgis*, Id., 529.

In *Selser v. Brock, supra*, 308, it is said: " It appears to be well settled both by reason and authority, that where one of two innocent persons must suffer by the fraud of a third person, he who trusted the third person and placed the means in his hands to commit the wrong, must bear the loss. *Lickbarrow v. Mason*, 2 T. R., 70. *Lane v. Borland*, 2 Shepley, 77. *Root v. French*, 13 Wend., 572. *Bank of St. Clairsville v. Smith*, 5 Ohio, 222. *Jennings v. Gage*, 13., Ill., 610. *Saltus v. Everett*, 20 Wend., 267. Hansen conveyed the land in question to his niece and himself placed the deed upon record. He thus held her out to the world as the owner of the land. He thereby in effect invited all persons to deal with her as owner. That she could incumber this land by mortgage or otherwise will not be seriously questioned; and but for the fact

that the plaintiff was in possession could have conveyed the land free from any interest possessed by him. He reposed confidence in his niece, and as between himself and third parties who acted in good faith must sustain whatever loss there may be from a betrayal of that confidence. Any other rule would offer a premium for collusion and fraud between relatives to the prejudice of third persons. The plaintiff, therefore, must pay Mr. Love $1,000, with interest from May 27th, 1884, together with costs, as a condition of obtaining a release of his claim.

3d.    The petition is framed upon the theory of an express trust, and a recovery is sought upon that ground alone. Sec. 3, chap. 32, Comp. Stat., provides that, "no trust or interest in land other than leases for a term not exceeding one year, nor any *trust* or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, or surrendered, or declared, unless by act or operation of law, or by a deep or conveyance in writing subscribed by the party creating, surrendering, or declaring the same. The 4th section excepts from the operation of this provision real estate disposed of by will, and trusts arising by implication or operation of law; and the 6th excepts agreements where there has been part performance. The allegations in the petition in this case are substantially the same as in that of *Courvoirsier v. Bouvier*, 3 Neb., 61, in which to establish the trust it was alleged that Bouvier, being about to go to New Orleans to obtain work, "and thinking it would be convenient and advisable that the title to said real estate should be vested in his wife in case of the plaintiff's death during his absence, the plaintiff voluntarily and without consideration, and in order to vest the title in said defendant, conveyed said premises" to her. That it was the understanding both of himself and wife that she was to hold the property in trust for him and not as her own. The alleged trust rested in parol in that case, and it was

held insufficient. In that case, however, there were the additional facts that the wife had been in possession since 1858, and that the husband had accepted a lease from her for a part of the land. Under a statute like ours an express trust in real estate cannot be raised by parol. 2 Roberts Stat. of Frauds, § 478. *Lambren v. Watson*, 6 H. & John., 255. *Robertson v. Robertson*, 9 Watts, 32. *Jackman v. Kingland*, 4 Watts & Serg., 149. It is contended on behalf of the plaintiff that the statute of frauds is personal, and that no one can plead it but Miss Berthelsen. This is true to the extent that as between Miss Berthelsen and the plaintiff no one can plead the statute for her and the defense is personal. When, however, she conveys to another and thereby denies by her act the existence of a valid contract between herself and her grantor for the reconveyance of the land, the grantee from her may set the statute up as a complete defense to the verbal contract, unless it has been so far performed as to take it out of the statute. In other words the defense is available to parties and privies. *Rickards v. Cunningham*, 10 Neb., 420. *Breckenridge Heirs v. Ormsby*, 1 J. J. Marsh, 236, 19 Am. Dec., 84–86. The defense, therefore, is available to Love.

The plaintiff has leave to file an amended petition conforming to his proof within thirty days, and he is required to pay the defendant Love the sum of $1,000, with interest and costs, within four months thereafter, and upon condition that he complies with these requirements within the time and in the manner specified the judgment will be affirmed, except as herein modified. But in case said plaintiff fails to comply with these requirements as above provided the judgment of the district court will be reversed and the cause dismissed.

JUDGMENT ACCORDINGLY.

The other judges concur.