Traver *v.* Purdy.

offer to deliver said certificate or certificates to defendant properly endorsed for transfer.'"

On the trial the plaintiff was permitted to prove that he tendered the certificates for the shares at the Hanover National Bank, March 29, 1890, when the note fell due and was presented for payment. The defendant objected to this testimony on the ground that it contradicted the reply, which objection was overruled and an exception was taken.. The plaintiff did not ask to amend his reply, nor that he be relieved from his admission. The defendant had the right to rely on this admission, and he was under no obligation to be prepared with evidence to meet this question. The reception of this testimony was error.

The defendant's exceptions must be sustained, and the verdict set aside and a new trial granted, with costs to the defendant, to abide the event.

Concur, C. H. V. B., A. B. P.

---

TRAVER *v.* PURDY.

*N. Y. Supreme Court, General Term, Fifth Department; October,* 1893.

*Pleading.*] In an action to specifically enforce an agreement to hold lands for the benefit of another within the provision of the Statute of Frauds (2 *R. S., p.* 134, § 6),—declaring that no interest in lands nor any trust over or concerning lands, shall be created or declared unless by writing,—defendant's denial of the agreement puts plaintiff to her proof, and when the proof made. is not such as the law requires, the defendant is in a situation to insist that there is none.*

Appeal from a judgment of a Special Term of the Supreme Court, Yates County, dismissing the complaint after a trial on the merits.

---

* See preceding cases, and note at p. 429.

Action by Judith M. Traver against Thomas O. Purdy and others.

The defendants are the heirs-at-law and administrators of Isaac S. Purdy, deceased. The complaint alleged in substance among other things the foreclosure by Isaac S. Purdy in his lifetime of a mortgage upon plaintiff's premises, and their sale thereunder to him for less than the amount of the judgment, that during the pendency of the foreclosure action, the said Isaac S. Purdy, in whom the plaintiff placed great confidence in regard to her business affairs, represented to the plaintiff that a sale in the foreclosure suit was necessary in order to procure a good title to the premises; " that thereupon relying upon such representations and advice and by reason thereof, this plaintiff consented to such sale, but upon the express agreement, which the said Isaac S. Purdy then made with this plaintiff, that in case the premises should not sell for $12,000 or upwards he would bid the same off and hold them until they could be sold for an adequate price, and that when so sold he would account to this plaintiff therefor," and pay over the proceeds to her above the amount of the mortgage and expenses of the sale ; and that relying upon such assurances the plaintiff did not attend the sale or protect her interest. Plaintiff demanded judgment, that the judgment in the foreclosure action be vacated or modified by striking out so much thereof as decreed that defendant thereon pay any deficiency, and that defendant's account for manure, wood, etc., and for the proceeds of a portion of the land that had been sold, and that if upon such accounting the mortgage indebtedness was found to have been paid, that a reconveyance to the plaintiff of the unsold portion of the premises should be decreed, and if otherwise, they should be declared to be held only as security for balance which might be found due.

The answer among other thing denied the paragraph in the complaint which alleged that Isaac S. Purdy had

Traver *v.* Purdy.

agreed to hold the foreclosed premises for plaintiff's benefit.

The further facts are fully stated in the following opinion of the Special Term.

RUMSEY, J.—The defendants are the heirs-at-law and the personal representative of Isaac S. Purdy. In the latter part of the year 1874, Isaac S. Purdy owned a bond and mortgage made by the plaintiff dated April 10, 1872, to secure the payment of $7,500 in five years with annual interest. The interest was entirely unpaid and the plaintiff was not able to pay it, nor was there any likelihood that she would be able to pay the principal sum when it should become due. The land covered by the mortgage was 153 acres and it was worth something over $9,000. The interest due was $1,050, and the total amount of the incumbrance due and to become due was something more than $8,900. There was more or less valuable timber on the farm, which the plaintiff had begun to cut and take away, and to prevent this, and at the same time to collect what was due upon his bond, Isaac S. Purdy began an action.

During the pendency of that action the transaction occurred which is the foundation of this suit.

It is stated by the daughter of the plaintiff, who was then a girl of 12 years, that Mr. Purdy came to her mother's house and said to her substantially that if the farm did not bring at the foreclosure sale a sum sufficient to pay the amount due on the mortgage and the costs and something over for her, he would bid it off and try to sell it for as good a price as could be got, and after paying the mortgage debt and costs and expenses would give her what was left. This was by parol and not in writing. It does not appear that Mrs. Traver paid anything to Purdy for this promise, or that she either took any action or forbore to take any action in reliance upon it. It is true she put in no defense to the action, but then there is no claim

that she had any defense. It is true also that she did not object to having the farm sold together, and the whole amount of the mortgage due, and to become due, paid out of the proceeds. But it appears from the judgment roll upon the foreclosure that it was conceded that the mortgaged premises were so situated that it would be most beneficial to the parties to have the whole farm sold together. Upon that state of facts the law required that the whole sum secured by the mortgage, due and to become due, should be paid, if the debt bore interest, as it did here (2 *R. S.* 193, secs. 165 and 166). So that it is clear she waived no right by not objecting to the payment of the whole debt. It seems that she was told she need not attend the sale. But there is no pretence that if she had attended she was in a situation to bid off the premises, or that she could have or would have procured any one else to do so, or that she would have made any effort to do so. There is nothing in the evidence to show the existence of any relation of trust or confidence between Mr. Purdy and the plaintiff. It is sworn to by the daughter that Mrs. Traver followed Mr. Purdy's advice and did as he thought best in regard to all her affairs. But it must be remembered that she was then only twelve years old and that she could have known but little about the matter, and her conclusion upon that subject (and her testimony is only her conclusion) is, in the nature of things, entitled to but little weight. The fact that she was stripping the farm of its timber, and that Purdy was obliged to sue her to prevent it, is pretty strong evidence that in some matters at least, and this matter was one of them, she acted without consulting him.

The plaintiff's case then stands upon a mere verbal promise to hold this farm for the benefit of the plaintiff in a certain event, which has not occurred. There was no fraud or estoppel ; no consideration ; no relation of trust or confidence ; no part performance ; no act done or forborne by the plaintiff which puts her in any worse con-

dition than if this talk had not taken place. It appears that Mr. Purdy allowed her to live in the house, while he occupied and worked the farm, and it may be inferred from what took place on his deathbed, that he would have done something for her had he lived. But nothing was said there which indicated that he felt any obligation or that he was governed by any other motive than his regard for her. . What was said to his sons clearly showed that he did not understand that he or they were bound to do anything as the result of a contract; but he left the plaintiff dependent upon their kindness as she had been upon his. Mr. Purdy bought the land upon the foreclosure and entered no judgment for deficiency. The amount unpaid on the mortgage was $8,965.63, and the costs and expenses of the foreclosure suit and sale were about $120, making in all $9,085.63. This was, in fact, about the value of the farm, although it seems that Mr. Purdy thought it worth more. But it is worthy of remark that although the farm had been on the market some time, Mrs. Traver was unable to sell it for any such price, and the highest offer stated to have been made at any time was $9,000 or perhaps $10,000. So it is quite clear that Purdy gave practically all the farm was worth when he took it on his mortgage.

There is nothing in the facts of this case to bring it within that class of cases of which Ryan *v.* Dox (34 *N. Y.* 307) constitutes an example. The whole transaction shows a mere verbal promise to buy land and hold it for the benefit of the plaintiff, of which it has been said that in order that the doctrine of trusts *ex maleficio* with respect to land may be enforced under any circumstances, there must be something more than the mere verbal promise, however unequivocal, otherwise the statute of frauds would be virtually abrogated (*Pomeroy*, *Eq.*, sec. 1056). The facts of the case bring it within the rule of Wheeler *v.* Reynolds (66 *N. Y.* 227). See also Dollar

Traver *v.* Purdy.

Sav. Blk. *v.* Bennett (76 *Pa. St.* 402).; Merritt *v.* Brown (21 *N. J., Eq.*, 401).

But the plaintiff insists that the defendant, not having pleaded the statute of frauds, is not entitled to its protection. The statute says that no interest in lands nor any trusts over or concerning lands shall be created or declared unless by writing (2 *R. S.* 134, sec. 6). In the courts of equity it had always been held that when an action to compel the specific performance of a contract to convey lands or to enforce a trust concerning them had been brought, the bill or complaint need not set out a writing (*Bliss on Code Pl.*, sec. 353). If the defendant answered, admitting the contract or not denying it, he must set up the statute of frauds if he relied upon that as a defense, if he did not set up that defense, the contract being established by the pleadings, there was no legal dispute as to its existence, and in that case unless the defendant claimed the protection of the statute, no question could arise upon it (Cozine *v.* Graham, 2 *Paige*, 177; Duffy *v.* O'Donovan (46 *N. Y.* 223, 226). In such a case it was necessary to plead the statute. But if the contract was denied so that the plaintiff was put to his proof, then he must make such proof as the statute required, and if the statute required a writing, he must prove his contract by the writing or fail in his suit (Cozine *v.* Graham, *supra;* Livingston *v.* Smith, 14 *How. Pr.* 490; Haight *v.* Child, 34 *Barb.* 186; Marston *v.* Swett, 66 *N. Y.* 207). This happens, not because the defendant insists upon the statute, but because the law requires written evidence to make out the cause of action. The denial by the defendant puts the plaintiff here to her proof, and when the proof made is not such as the law requires, the defendant, who denies the existence of any contract, is in a situation to insist that there is none.

The case of Porter *v.* Wormser (94 *N. Y.* 431), cited by plaintiff, was, as appears by the remarks of the judge at page 450, one of the class where the party insisting on

Traver *v.* Purdy.

the statute had set up the contract in his pleading and relied on it as the basis of his cause of action, and the court does not consider whether the contract was proved by a writing or not. In Hamer *v.* Sedway (124 *N. Y.* 538), it appeared that the defendant had written a letter admitting the promise sued on. No question of the statute could therefore arise, and the court held there was no such question in the case. The defendant here has not waived the statute, but is still in a position to insist upon it. It is a bar to the action of the plaintiff.

It may be said, too, that besides the insuperable barrier of the statute, the plaintiff's case is fatally defective in that no consideration is shown to have moved from her for the promise of Purdy. This fact is fatal to her cause of action (*Pomeroy Eq.* sec. 1293). But it is not necessary to enlarge upon this point. There is no view of the case in which she could be entitled to judgment.

*Charles W. Kimball,* for appellant.

*M. A. Leary,* for respondents.

PER CURIAM.—Judgment appealed from affirmed with costs upon the reasons stated in the opinion of RUMSEY, J., at special term.

Argued before LEWIS, BRADLEY and HAIGHT, J.J.