## UGLAND v. FARMERS & MERCHANTS' STATE BANK OF KNOX et al.

### (137 N. W. 572.)

**Quieting title — specific performance — evidence.**

1. Plaintiff U. and defendant H. both claim to have purchased N.'s equities in certain land held by him under the usual crop payment contract for deed. Defendant bank holds the legal title in trust merely and as security for the balance due on the purchase price under an executory contract of sale made by the bank's grantor to N. The action is for specific performance as against defendant bank, and to quiet title as against defendant H. The evidence discloses that for valuable consideration N. sold and assigned in writing, with his grantor's consent, his contract to purchase, to plaintiff, but that prior thereto defendant H. had entered into a verbal agreement with N. for the purpose of the title to such land or of N.'s interest therein, and paid the

sum of $1 only the agreed purchase price. This verbal understanding did not authorize H. to enter into possession, although he subsequently did, through his servant, occupy the buildings on the premises with N.'s acquiescence, but under an entirely separate and distinct agreement from the alleged sales contract.

Evidence examined, and *held*, that the trial court properly gave judgment in plaintiff's favor.

**Specific performance — statute of frauds — abrogation of contract.**

2. The verbal agreement between N. and defendant H. was never executed by either party, and was within the statute of frauds, and prior to the plaintiff's purchase, N. repudiated and abrogated the same after making several unsuccessful efforts to get H. to comply therewith, and tendered back such dollar payment.

*Held*, that such verbal agreement being voidable, N.'s election to declare it void devested H. of all rights thereunder. *Held*, further, that N.'s act in selling to plaintiff was, in any event, an effectual abrogation of such voidable agreement.

**Frauds — statute of frauds.**

3. The statute of frauds may be invoked not only by the immediate parties thereto, but by those in privity with them.

**Frauds — statute of frauds — verbal contract.**

4. *Held*, for reasons stated in the opinion, that plaintiff had the right to and did properly invoke the statute of frauds as against the verbal contract and the alleged claims of H. thereunder.

**Appeal and error — theory of case.**

5. The theory adopted by the parties in the court below and pursuant to which the trial was there conducted cannot be departed from for the first time in the supreme court.

**Tender — no objections made, and therefore statutory provisions waived.**

6. On June 4, 1909, plaintiff tendered to defendant bank the sum of $2,615, being the balance of the purchase price then due on the contract. Such tender was in the form of a cashier's check, instead of currency, but no objection on this ground was made.

*Held*, that by such failure to object, the bank, by the provisions of § 5260, Revised Codes 1905, waived the mode of such tender.

**Tender — sufficiency — statutory provisions.**

7. Under the provisions of Revised Codes, § 5259, relating to tender and deposit and notice thereof, it was unnecessary to state in such notice that the bank in which such deposit was made was of good repute. Nor was it necessary for plaintiff to prove such fact, as, in the absence of proof to the contrary, the presumption prevails that such bank was of good repute.

Opinion filed June 19, 1912.   Rehearing denied September 14, 1912.

Appeal by defendants from a judgment of the District Court for Pierce County; *A. G. Burr*, J., in plaintiff's favor in an action brought to enforce specific performance of a contract for the sale of certain property and to quiet title.

Affirmed.

Action for specific performance of a contract for the sale and purchase of certain real property, and also to quiet title. Plaintiff recovered judgment in the district court, and defendants have appealed therefrom to this court, and a trial *de novo* is demanded.

The statement of facts in respondent's brief is substantially correct, and we adopt such statement without change except in a few immaterial respects. It is as follows:

On July 8, 1904, William M. Noble and I. Wesley Noble purchased the premises involved from the then owner for the sum of $3,000, and received a contract for deed therefor, based upon the so-called crop payment plan. This contract was executed by H. Herbert Steele, apparently in an individual capacity, but afterwards when it was discovered that a mistake had been made, and that the title to this land was in security company, a corporation of which Mr. Steele was the treasurer and managing officer, and for which corporation he had full power to make contracts and execute conveyances, the security company duly ratified such contract of sale, and executed a supplementary contract accepting the terms of the former contract. Under this contract, the two Nobles went into possession of the premises, and cropped same, and made certain payments on the contract. About April 13, 1908, Wm. M. Noble assigned his interest in the contract and premises to his brother, I. Wesley Noble.

During the winter of 1909, the exact date being in dispute, the defendant Hanson had a conversation with the Nobles relative to the purchase of their interest in the land in question, and a verbal agreement was reached whereby I. Wesley Noble agreed to sell, for the consideration of $3,000, $1 of which was then paid by Hanson. As to the exact arrangement made between them the testimony is largely in conflict, with the single exception that the total price or valuation of the premises was fixed at $3,000. Noble claims that he was to assign his contract to Hanson upon the payment to him by Hanson of a sum

afterwards to be ascertained to be equal to the difference between $3,000 and the amount due to the security company, including taxes against the premises. Hanson, on the other hand, absolutely denies this, and claims that he did not in any manner agree to buy Noble's equity in the premises, or agree to take an assignment of his contract, but that the agreement was that he was to pay Noble $3,000 for a warranty deed and a good title to the premises. The contract was merely executory, and it was an open question with both parties as to whether the deal would ever be finally consummated. No agreement was made whereby Hanson was permitted to enter into possession of the premises, and the conversation which took place between them at the time when Hanson obtained the key for the house on the premise shows that even at that time it was still an open question as to whether the deal would ever be consummated. The testimony shows that, so far as obtaining possession of the premises is concerned, defendant Hanson did so without authority from Noble, and under an agreement which recognized that he was not entitled to possession.

One of Noble's reasons for desiring to sell the premises was to obtain money for the purpose of making a redemption of some land which had been foreclosed. Noble claims that it was essential that he get this money during April, 1909, in order to use the money for the purpose desired. It is conceded that Noble, a number of times, called upon Minkler and Hanson, and requested payment of the moneys which would be due him if the deal were consummated, but that they failed and neglected to either pay or tender, or even offer to pay him. On or about April 26, 1909, Noble went to see Hanson, and insisted that either the money would have to be paid to him, or else the deal would have to be declared off; and that Hanson made no serious objection thereto, but on the contrary virtually consented to such an arrangement.

Thereafter, and on the same day, Noble told Hanson that the deal was off, and tendered him the $1 which he, Hanson, had paid to him at the time of their first conversation. It is not contended that up to this time Hanson had done any work upon the premises.

Thereafter on April 30, 1909, Noble sold his interest in the premises and assigned his contract to the plaintiff in this action. This assignment was in writing, and prior thereto the written consent of the vend-

or in such contract had been obtained. At that time the plaintiff paid to Noble for such assignment the sum of $260 in cash, and agreed to assume the balance due on the contract to Steele, making the total price paid $2,800. The balance remaining due on the contract on June 4, 1909, amounted to $2,615, and Ugland, at the time of purchasing the premises from Noble, gave him a draft for $260, and afterwards paid the taxes on the premises amounting to $201.80. It is not disputed that on April 30, 1909, Noble informed Ugland that all his negotiations with the defendant Hanson had been declared off, and that he desired to accept an offer for his equity in the land, which the plaintiff had made some time prior thereto. Thereafter on May 3d and 4th, 1909, the plaintiff notified the defendant Hanson that he had purchased the premises from Noble, and it is not contended that up to this time Hanson had done any work or sown any grain on the premises. Hanson shortly thereafter began to seed on said premises, with the result that on May 10th he had about 40 acres sowed. On or about May 7th, Minckler, the cashier of defendant bank, paid to the security company the amount of their interest in the premises, something between $2,500 and $2,600, and obtained from this company a deed for the premises and an assignment of the contract with Noble, and at the same time and as a part of the same conversation and transaction, Steele, the officer of the security company who executed the deed, exhibited to Minckler the letter received from the plaintiff, Ugland, to the effect that Ugland had purchased the interest of Noble in the premises. The testimony shows that on the day when Ugland, the plaintiff, notified Hanson that he had purchased the premises from Noble and directed him to cease exercising any control over the same, Hanson went to the defendant bank and had a conversation with Minckler, but they both denied that Hanson informed Minckler of the fact that Ugland had notified Hanson of the purchase of the premises, yet, the day following, Minckler went to Mohall and obtained the deed from the security company.

The defendant bank took the deed merely as a trustee, and does not claim to own it or hold it in any other capacity. On June 4, 1910, the plaintiff caused to be tendered to the defendant bank, a cashier's check for the sum of $2,615, the full amount then remaining unpaid on the contract; and the preponderance of the evidence clearly shows.

that the defendant made no objection to the tender because it was in a form of a check, but expressly waived this point.

Thereafter, and on the same day, the sum of $2,615 was deposited to the credit of defendant bank in the Security Bank of Knox, a bank regularly organized, and then and still doing business as a bank, under the laws of the state of North Dakota, and that said amount of money has remained on deposit therein ever since. On the same day a notice of such deposit was served upon the defendant bank.

It is conceded that neither the bank nor Hanson has ever at any time paid or offered to pay to Noble or his assignee, the plaintiff, any part or portion of the moneys which remained due to Noble if the negotiations between Noble and Hanson had been carried out.

*F. T. Cuthbert,* for appellant.

There was a sufficient performance to take the case out of the statute of frauds. See McCullon v. Mackrell, 13 S. D. 202, 83 N. W. 255; Lothrop v. Marble, 12 S. D. 511, 76 Am. St. Rep. 626, 81 N. W. 886; Note to Frame v. Frame, 5 L.R.A. 325.

The contract being executed, it is as valid as though the statute of frauds did not exist. Lindersmith v. Schwiso, 17 Minn. 26, Gil. 10; Evans v. Winona Lumber Co. 30 Minn. 515, 16 N. W. 404; Morrill v. Mackman, 24 Mich. 279, 9 Am. Rep. 124; Laughran v. Smith, 75 N. Y. 205; Larkin v. Avery, 23 Conn. 304; Sovereign v. Ortmann, 47 Mich. 181, 10 N. W. 191; Bishop, Contr. § 634; Peoples v. Evens, 8 N. D. 121, 77 N. W. 93; 1 Dembitz, Land Titles, page 481 and note; Bates v. Babcock, 95 Cal. 479, 16 L.R.A. 751; Pico v. Cuyas, 47 Cal. 174; Lowman v. Sheets, 124 Ind. 416, 7 L.R.A. 787, 24 N. E. 351.

A stranger or third person cannot claim the benefit of the statute of frauds. Kelly v. Kendall, 118 Ill. 650, 9 N. E. 261; Browne, Stat. Fr. § 287; Donellan v. Read, 3 Barn. & Ad. 899, 6 Eng. Rul. Cas. 298; Smith v. Neale, 2 C. B. N. S. 67, 26 L. J. C. P. N. S. 143, 3 Jur. N. S. 516, 5 Week. Rep. 563; Holbrook v. Armstrong, 10 Me. 31; Bell v. Hewitt, 24 Ind. 280; Wolke v. Fleming, 103 Ind. 105, 53 Am. Rep. 495, 2 N. E. 325; St. Louis, K. & N. W. R. Co. v. Clark, 121 Mo. 169, 26 L.R.A. 761, 25 S. W. 192, 906; 1 Dembitz, Land Titles, p. 467; Ryan v. Tomlinson, 39 Cal. 639; Gulf, C. & S. F. R. Co. v. Settegast, 79 Tex. 256, 15 S. W. 228; Richards v. Cunningham,

10 Neb. 417, 6 N. W. 475; Bishop, Contr. 2d ed. § 1239; Bailey v. Irwin, 72 Ala. 505; Miller v. Munroe, 59 App. Div. 623, 69 N. Y. Supp. 861; Skinner v. McDouall, 2 De G. & Sm. 265, 12 Jur. 741, 17 L. J. Ch. N. S. 347; Chicago Dock Co. v. Kinzie, 49 Ill. 289, 293; Bohannon v. Pace, 6 Dana, 194; Cooper v. Hornsby, 71 Ala. 65; Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 610; Grisham v. Lutric, 76 Miss. 444, 24 So. 169.

*L. R. Nostdal* and *Christianson & Weber* for respondent.

Payment of the consideration alone, upon a contract for an interest in lands, is not sufficient part performance to take it out of the statute of frauds. Cooley v. Lobdell, 153 N. Y. 596, 47 N. E. 783; Aird v. Alexander, 72 Miss. 358, 18 So. 478; Wallace v. Long, 105 Ind. 522, 55 Am. Rep. 222, 5 N. E. 666; Merchants' State Bank v. Ruettell, 12 N. D. 519, 97 N. W. 853; Jourdain v. Fox, 90 Wis. 99, 62 N. W. 936; Bruley v. Garvin, 105 Wis. 625, 48 L.R.A. 839, 81 N. W. 1038; Ellis v. Cary, 74 Wis. 176, 4 L.R.A 55, 17 Am. St. Rep. 125, 42 N. W. 252; Scheuer v. Cochem, 126 Wis. 209, 4 L.R.A.(N.S.) 427, 105 N. W. 573; Dicken v. McKinley, 163 Ill. 318, 54 Am. St. Rep. 471, 45 N. E. 134; Smith v. Phillips, 69 N. H. 470, 43 Atl. 183; Nye v. Taggart, 40 Vt. 295; Osgood v. Shea, 86 Neb. 729, 42 L.R.A.(N.S.) 648, 126 N. W. 310; Ross v. Cook, 71 Kan. 117, 80 Pac. 38; Roberts v. Templeton, 48 Or. 65, 3 L.R.A.(N.S.) 790, 80 Pac. 481; Kelsey v. McDonald, 76 Mich. 188, 42 N. W. 1103; Bartlett v. Bartlett, 103 Mich. 293, 61 N. W. 500; Usher v. Flood, — Ky. —, 17 S. W. 132; Riley v. Haworth, 30 Ind. App. 377, 64 N. E. 928; Barickman v. Kuykendall, 6 Blackf. 21; Sailors v. Gambril, 1 Ind. 88; Jackson ex dem. Smith v. Pierce, 2 Johns. 221; Bringhurst v. Texas Co. 39 Tex. Civ. App. 500, 87 S. W. 893; Senior v. Anderson, 115 Cal. 496, 47 Pac. 454; Gorham v. Dodge, 122 Ill. 528, 14 N. E. 44; Clark v. Clark, 122 Ill. 388, 13 N. E. 553; Osborn v. Phelps, 19 Conn. 63, 48 Am. Dec. 133; Lewis v. North, 62 Neb. 552, 87 N. W. 312.

A vendee or grantee succeeds to the right of their grantors or vendors to the extent that they may plead the statute of frauds as against parties pretending to claim through the same vendors or grantors. Messmore v. Cunningham, 78 Mich. 623, 44 N. W. 145; Dailey v. Kinsler, 35 Neb. 835, 53 N. W. 973; Hansen v. Berthelsen, 19 Neb. 433, 27 N. W. 423; Masterson v. Little, 75 Tex. 682, 13 S. W. 154;

Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 610; Shelton v. Thompson, 96 Mo. App. 327, 70 S. W. 256; Petty v. Petty, 4 B. Mon. 215, 39 Am. Dec. 501; First Nat. Bank v. Blair State Bank, 80 Neb. 400, 127 Am. St. Rep. 752, 114 N. W. 409, 16 Ann. Cas. 411.

Defendant waived any objections which it might have urged, and the tender was perfectly good. Walsh v. St. Louis Exposition & Music Hall Asso. 101 Mo. 534, 14 S. W. 722; Hidden v. German Sav. & L. Soc. 48 Wash. 384, 93 Pac. 668; Mitchell v. Vermont Copper Min. Co. 67 N. Y. 280; Ricketts v. Buckstaff, 64 Neb. 851, 90 N. W. 915; Kollitz v. Equitable Mut. F. Ins. Co. 92 Minn. 234, 99 N. W. 892; Shay v. Callanan, 124 Iowa, 370, 100 N. W. 55; People ex rel. Mulford v. Mayhew, 26 Cal. 655; Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207; Boyum v. Johnson, 8 N. D. 306, 79 N. W. 149; Mitchell v. Vermont Copper Min. Co. 67 N. Y. 280.

Fisk, J. (after stating the facts as above). The chief question in dispute in this litigation is as to who, as between plaintiff, Ugland, and defendant Hanson, is equitably entitled to the land in controversy. Both claim from a common source, while the defendant bank claims to hold the title merely in trust for its codefendant. The crucial question is whether, prior to the time plaintiff purchased the assignment of the contract from Noble, the latter had, by a valid contract, parted with his interest in such land to defendant Hanson, and this, in turn, depends upon the correctness of the contention on Hanson's part that he had so far consummated and executed the prior verbal agreement with Noble as to vest in him the latter's interest.

It is not disputed that some time prior to plaintiff's purchase oral negotiations were had between Noble and Hanson, towards the purchase by the latter of the former's interest, and that such negotiations finally culminated in an oral agreement, whereby Noble agreed to sell and Hanson agreed to purchase the land for a consideration of $3,000, to be paid in a designated manner, and that $1 of such sum was in fact paid, with the intention, as stated by Hanson, of binding the bargain. These parties, however, do not agree in their testimony as to the details of such agreement, Noble testifying to an understanding that he was merely to assign to Hanson his contract with the security company, and to receive from him the difference between $3,000,

and the amount still remaining due to such company on said contract; while Hanson denies this and swears positively to an understanding that he was to pay Noble $3,000 cash for a warranty deed of the premises, free of encumbrances. There was no agreement that Hanson should have possession of the land prior to the consummation of the deal, but some time later Hanson's servant moved into the house without permission from Noble, and thereafter permission to remain was given on condition that, if the deal fell through, the use of the buildings should be treated as an offset to certain needed repairs to be made by Hanson to such buildings. Such preliminary verbal agreement was never consummated. Whether the failure to consummate the same was Noble's or Hanson's fault is in dispute; but, as we view it, such fact is not controlling, for nothing was done by Hanson under this agreement up to the time plaintiff's rights attached, except to pay the $1 aforesaid. It is true he had acquired permission, as above stated, for his servant to remain in the house on the land conditionally, but it is entirely clear that such facts are wholly insufficient to take the contract without the statute of frauds. Noble had the undoubted right to treat such contract at an end, as he did, and to dispose of his equity to plaintiff. His testimony to the effect that he several times demanded of Hanson that he fulfil his agreement, and that he gave him ample opportunity to do so, is, we think, true. It was certainly to his interest to deal with Hanson on a $3,000 basis, if possible, rather than to deal with plaintiff on a $2,800 basis. His principal object in selling was to raise money with which to effect a redemption of other lands from forced sale, and he waited on Hanson as long as he could, and finally notified him that the deal was off and tendered back the $1 payment. We think this effectually terminated any right which Hanson may have had under the verbal agreement. Hanson is not entitled, under this record, to any legal or equitable consideration. The small amount of seeding which he did on this land in the spring of 1909 was done after he was notified that the deal was declared off, and after being informed of plaintiff's purchase; and not only this, but the same was done against the positive protest of plaintiff. Appellant's counsel charges plaintiff with bad faith in purchasing with knowledge of Hanson's contract. This is not justified by the record which discloses by uncontroverted testimony that he was informed, be-

fore purchasing, that Hanson's deal had fallen through. Had he any reason to believe that this was untrue, is it likely that he would have parted with his money as he did, knowing that he was merely buying a lawsuit? The testimony shows that Noble solicited plaintiff to make the purchase, instead of plaintiff soliciting him to sell, as appellant's counsel would have us believe. The evidence discloses that plaintiff acted in making such purchase in the utmost good faith, and with no intention of infringing upon the rights of anyone. His testimony and that of his witnesses is both reasonable and probable, and we deem his cause of action meritorious. Much of appellant's argument is predicated upon the erroneous assumption that the verbal negotiations between Noble and Hanson amounted to an executed contract. Such contention is so manifestly untenable that we pass it without further comment.

But appellant contends that plaintiff is not in a position to invoke the statute of frauds as against defendants, being himself a stranger to the Hanson contract. If such contention is sound, it would logically follow that a vendor in an executory contract, voidable under the statute, would have his hands tied so effectually that he could not transfer the premises to another until he had first procured a judicial decree adjudging the contract at an end. This is not the law. Noble had the undoubted right to do as he did, repudiate such alleged contract by selling to plaintiff. By such sale Noble elected to treat his former voidable contract with Hanson as void. The fact that Noble, both prior to the sale to plaintiff and by such sale, repudiated the former contract unquestionably, may be shown by plaintiff. The authorities cited to the contrary by appellant's counsel do not support such contention. We cite below a few of the many cases announcing what we deem the correct rule.

Messmore v. Cunningham, 78 Mich. 623, 44 N. W. 145; Hansen v. Berthelsen, 19 Neb. 433, 27 N. W. 423; Shelton v. Thompson, 96 Mo. App. 327, 70 S. W. 256; First Nat. Bank v. Blair State Bank, 80 Neb. 400, 127 Am. St. Rep. 752, 114 N. W. 409; Sanborn v. Murphy, 86 Tex. 437, 25 S. W. 613.

We quote from Hansen v. Berthelsen, supra, as follows: "It is contended on behalf of the plaintiff that the statute of frauds is personal, and that no one can plead it but Miss Berthelsen. This is true to

the extent that, as between Miss Berthelsen and the plaintiff, no one can plead the statute for her, and the defense is personal. When, however, she conveys to another, and thereby denies by her act the existence of a valid contract between herself and her grantor for the reconveyance of the land, the grantee from her may set the statute up as a complete defense to the verbal contract, unless it has been so far performed as to take it out of the statute. In other words, the defense is available to parties and privies. Rickards v. Cunningham, 10 Neb, 420, 6 N. W. 475; Breckenridge v. Ormsby, 1 J. J. Marsh. 236, 19 Am. Dec. 84–86. The defense, therefore, is available to Love."

There is no merit in appellant's contention that the statute of frauds was not properly raised by plaintiff. The complaint alleges that Hanson's claims to such property are based on a certain oral agreement claimed to have been made with Noble. The answer alleges, by way of new matter, an executed agreement between Noble and Hanson, whereby the latter purchased the former's interest in such land and was given possession. This is deemed denied by plaintiff, and it was incumbent on defendants to prove a valid contract as thus alleged, and it was unnecessary for plaintiff, in order to rely on the statute, to serve a reply raising such question. See Feeney v. Howard, 79 Cal. 525, 4 L.R.A. 826, 12 Am. St. Rep. 162, 21 Pac. 984, and cases therein cited. Also Jones v. Pettigrew, 25 S. D. 432, 127 N. W. 538; Traver v. Purdy, 30 Abb. N. C. 443, 25 N. Y. Supp. 452. Furthermore the action was tried throughout in the court below upon the assumption by both sides that the statute of frauds was in issue, and defendants sought to show that the Hanson contract had been so far executed as to take it without the operation of the statute.

The sufficiency of the tender made by plaintiff to defendant bank of the sum of $2,615 on June 4, 1909, being the balance then due from plaintiff on the purchase price, is next challenged by appellants, but under the evidence we entertain no doubt as to its sufficiency. The fact that a cashier's check was tendered, instead of currency, is not fatal; for the tender of currency was waived by not objecting to the form of the tender on this ground. Section 5260, Revised Codes 1905, expressly thus provides in the following language: "All objections to the mode of an offer of performance, which the creditor has an opportunity to state at the time to the person making the offer, and

which could be then obviated by him, are waived by the creditor, if not then stated."

But it is argued that such tender was not kept good because the notice of the deposit of said sum in the Security Bank of Knox failed to state that such bank was a bank of good repute. Such contention is wholly devoid of merit. The statute, § 5259, Revised Codes, does not require that the notice shall state such fact. If the fact exists the tender is good, and the obligation discharged, provided the notice is otherwise sufficient. It was unnecessary for plaintiff to prove that this bank was of good repute, for the presumption, in the absence of a different showing, is that it was. There having been a due offer of payment of the amount due, and this sum having been immediately deposited in a bank of deposit in this state of good repute, and due notice thereof given to defendant bank, it follows that under § 5259, supra, the obligation was discharged.

Our conclusions, as above stated, lead to an affirmance of the judgment, and it is accordingly affirmed.