FRED C. THORNHILL and Bob Willets, Copartners as Willets & Thornhill, v. JOURGEN OLSON.

(L.R.A.1916A, 493, 153 N. W. 442.)

One Havlicheck and wife entered into a written contract of sale of 400 acres of land, near Minot, to plaintiffs. Eighty acres of Illinois land was to be

Note.—The authorities passing upon escrow agreements are reviewed in an extensive note in 130 Am. St. Rep. 910.

As to payment by check, see note in 35 L.R.A.(N.S.) 26.

31 N. D.—6.

accepted in part payment. The contract provided for inspection of the Illinois land. It was reported to be satisfactory. H. and wife then executed to Thornhill their warranty deed to the 400 acres and a bill of sale of the personal property thereon, pursuant to the contract. Plaintiffs executed their deed to the Illinois land. All deeds, bill of sale, and the preliminary contract of sale, accompanied by a written escrow agreement, were deposited in the Second National Bank of Minot. This bank received as depositary in escrow all of the deeds to be delivered according to the conditions of the written escrow agreement, which provided that the deeds were "to be delivered to the parties who are entitled to same upon performance of the agreements set forth" in the preliminary agreement of purchase and sale of the land. The original sale agreement stipulated for an initial payment of $1, made and received; that certain mortgages should be assumed by the purchaser; and the further payment of $3,000 in cash should be made by Thornhill to H., but with no definite time fixed for payment. Abstracts of title to all land here and in Illinois were also to be furnished. No stipulation was made for inspection of them. These papers were so deposited in escrow on April 15, 1912. Four days later H. and wife executed and delivered their warranty deeds, immediately placed of record, to the 400 acres to defendant, Olson, as grantee, who, under the findings of the jury, it must be assumed, bought with notice of the escrow arrangement and the previous deposit of the papers thereunder with the bank. On April 23d plaintiffs procured title to the Illinois tract, which before that time they did not own, although they had attempted to deed same by the invalid deed in which the wife of one of said grantors had not joined, and which deed had been one of the instruments deposited in escrow. May 11th a second and valid deed to the Illinois tract was deposited with the bank to replace the invalid one, or to cure any defect of title thereunder, and on that day plaintiff served notice on H. and wife to appear at the bank at a certain hour that day to close up the escrow matter. They did not appear. On April 19th Thornhill served Olson with a written notice of the escrow arrangement, stating that "all interest, right, or title you acquire in said premises you take subject to the equities of the undersigned under and by virtue of said contract for deed." On May 11th plaintiffs, acting by their agent, the Brush-McWilliams Company, deposited with said bank a check drawn by plaintiffs on an Illinois bank and indorsed by the Brush-McWilliams Company, which check was payable to said bank, as payee, for the sum of $3,000. The bank thereupon treated the check as cash, but retained it, and it never has been cashed. On deposit with it of said check, the bank delivered, on May 11th, the deed of H. and wife, held by it in escrow, to plaintiffs. Neither H. and wife nor Olson has ever participated in the escrow proceedings after April 15th, nor done any act to recognize the same, or toward performance of the original contract of sale, after the deposit in escrow made April 15th; but on the contrary have disregarded the same, Olson having claimed at all times to have been a good

faith purchaser without notice of the escrow proceedings. He has paid H. and wife part, if not all, of the consideration for his deed. The action, though in equity to quiet title, is based upon title arising under a valid delivery by the bank to plaintiffs of the deed in escrow. It was tried as a law action to a jury, which found for plaintiffs for possession and $750 damages for detention thereof. Findings and conclusions were also made in accordance with and supplemental to the verdict. Defendant appeals as in an action at law on specifications of error, and not as on a trial *de novo*, and the case is submitted on appeal as a law case on an appeal from both an order denying a new trial and from the judgment. *Held:*

**Deed — delivery — escrow — depositary — second delivery.**

1. That the delivery of the deed by the bank to plaintiffs was unauthorized, and was in disregard of the escrow agreement in that it was delivered without a cash payment made by plaintiffs of $3,000 to said depositary, as was stipulated for by the escrow agreement before a valid second delivery of the deed could be made.

**Escrow agreement — depositary — check — in lieu of cash — substantial performance — second delivery.**

2. Under the escrow agreement said depositary was without authority to accept a check as and in lieu of a cash payment, and that the doctrine of substantial performance does not apply to a second delivery of deeds under a written escrow agreement.

**Escrow — conditions — precedent — valid second delivery — what is — grantor — consent — withheld — title.**

3. The conditions stipulated for in an escrow agreement in writing, upon which the second delivery of the deed shall be made, are conditions precedent to its valid second delivery, and the consent of the grantor to its second delivery is deemed to be withheld until full compliance has been had with the escrow agreement. As a deed delivered without consent of the grantor passes no title, consent being essential to its validity, a deed delivered by the depositary in violation of the escrow agreement is no delivery, and passes no title.

**Depositary — agent of both parties — must not aid either — mere conduit — powers — acts in excess of — void.**

4. The depositary is the agent of both parties, but neither for one more than the other, and is empowered to aid neither; and is merely a conduit used in passing title for convenience and safety. A delivery by the depositary in excess of its powers is a nullity.

**Bank depositary — check in lieu of cash — loan by bank.**

5. The reception by the bank of the check in lieu of money did not amount to a loan of money by the bank to the plaintiffs, and will not be treated as such.

**Bank — accepting check — in lieu of cash — not act of grantors — void.**

6. The act of the depositary in accepting the check as cash was not the act of the grantors, but was void as in excess of authority conferred by them upon the bank.

**Performance — escrow agreement — ability to perform — not in issue.**

7. The question involved is one of performance of the escrow agreement,— not of the ability of the plaintiffs to perform that agreement,—as such ability, without full performance, cannot amount to compliance.

**Deposit in bank — escrow — title — agreement — construction of.**

8. It is assumed, without deciding, that the deposit of papers with the bank amounted to a deposit in escrow. Plaintiffs can have no standing on their claim of title, unless the same constituted an agreement in escrow.

**Law — errors in — law action — trial de novo — theory.**

9. The case is treated on this appeal as it was tried below, and treated by the parties on the appeal, *viz.*, a review of errors at law in a law action, and not a trial *de novo.*

**Title — not shown — relief — dismissal.**

10. It appears from the theory had of the case on trial and on appeal, that no title can ever be shown to have been in plaintiffs, and that they can never recover on the basis of title having passed to them, and are therefore without possibility of relief in this action; and the same is accordingly ordered dismissed.

Opinion filed March 31, 1915. Rehearing denied June 7, 1915.

Appeal from the judgment of the District Court of Ward County, *Leighton,* J., and an order refusing a new trial.

Defendant appeals.

Order reversed and dismissed.

*Palda, Aaker, & Greene,* for appellant.

Plaintiffs must show title in fee simple, as alleged in the complaint, or they cannot recover. Brown v. Comonow, 17 N. D. 84, 114 N. W. 728; Hebden v. Bina, 17 N. D. 235, 138 Am. St. Rep. 700, 116 N. W. 85; Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227; Harmon v. Goggins, 19 S. D. 34, 101 N. W. 1088; Weeks v. Cranmer, 17 S. D. 173, 95 N. W. 875; Youker v. Hobart, 17 N. D. 296, 115 N. W. 839.

In matters of escrow the law holds the grantee to very strict performance of the conditions imposed. 16 Cyc. 577, and note 5; Cotton v.

Gregory, 10 Neb. 125, 4 N. W. 939; Henderson v. Johns, 13 Colo. 280, 22 Pac. 461; Hoig v. Adrian College, 83 Ill. 267.

An escrow given to the grantee or obligee by the depositary before compliance with the conditions, or before the happening of the event stipulated, passes no title to the grantee, or gives no right to the obligee. 16 Cyc. 579, and cases in note 20; Everts v. Agnes, 4 Wis. 356, 65 Am. Dec. 314; Black v. Shreve, 13 N. J. Eq. 455; Patrick v. McCormick, 10 Neb. 1, 4 N. W. 312; Schmidt v. Musson, 20 S. D. 389, 107 N. W. 367; Matteson v. Smith, 61 Neb. 761, 86 N. W. 472; Daggett v. Daggett, 143 Mass. 516, 10 N. E. 311.

Where a first delivery under an escrow agreement violates such agreement, a second attempted delivery does not relate back as a delivery and transfer of title as of the date of the first delivery or deposit. 16 Cyc. 561; Rev. Codes 1905, §§ 4954, 4955, 4957, Comp. Laws 1913, §§ 5497, 5498, 5500; Patrick v. McCormick, 10 Neb. 1, 4 N. W. 312; Baum's Appeal, 113 Pa. 58, 4 Atl. 461; 3 Words & Phrases, 2467—cases cited; Price v. Pittsburgh, Ft. W. & C. R. Co. 34 Ill. 13; Demesmey v. Gravelin, 56 Ill. 93; May v. Emerson, 52 Or. 262, 96 Pac. 454, 1065, 16 Ann. Cas. 1129; Cagger v. Lansing, 43 N. Y. 550; Taft v. Taft, 59 Mich. 185, 60 Am. Rep. 291, 26 N. W. 426; Stephens v. Rinehart, 72 Pa. 434; Schmidt v. Musson, 20 S. D. 389, 107 N. W. 367; 4 Kent, Com. 454.

There is no delivery by relation in this case. In some exceptional cases there is such a thing as constructive delivery; but in the case of an escrow, there is no effect to be given to the instrument until the delivery to the depositary. 4 Kent, Com. 454, 455; May v. Emerson, 52 Or. 262, 96 Pac. 454, 1065, 16 Ann. Cas. 1129; Jackson ex dem. Russell v. Rowland, 6 Wend. 667, 22 Am. Dec. 557; Prutsman v. Baker, 30 Wis. 644, 11 Am. Rep. 592.

The intention of the grantor to give present title is the test of the right to claim delivery by relation. It has no connection with an escrow, which depends entirely upon the happening and doing of the things mentioned in the escrow agreement. Prutsman v. Baker, 30 Wis. 644, 11 Am. Rep. 592; Jackson v. Rowley, 88 Iowa, 184, 55 N. W. 339; Taft v. Taft, 59 Mich. 185, 60 Am. Rep. 291, 26 N. W. 426; May v. Emerson, 52 Or. 262, 96 Pac. 454, 1065, 16 Ann. Cas. 1129.

Plaintiffs have not shown title, and have mistaken their remedy. The deed of the Havlichecks conveyed legal title to defendant: Cannon v. Handley, 72 Cal. 133, 13 Pac. 315; May v. Emerson, 16 Ann. Cas. 1129 and note, 52 Or. 262, 96 Pac. 454, 1065; Wilkins v. Somerville, 80 Vt. 48, 11 L.R.A.(N.S.) 1183, 130 Am. St. Rep. 906, 66 Atl. 893; Pom. Spec. Perf. of Contr. §§ 464–466; Flanagan Estate v. Great Central Land Co. 45 Or. 335, 77 Pac. 485.

The submission of special findings is discretionary with the court; but an abuse of it will constitute reversible error. Morrow v. Saline County, 21 Kan. 484; Ryan v. Rockford Ins. Co. 77 Wis. 611–615, 46 N. W. 885; Burke v. McDonald, 2 Idaho, 679, 33 Pac. 49, 17 Mor. Min. Rep. 325; Cole v. Boyd, 47 Mich. 98, 10 N. W. 124; Bess v. Chesapeake & O. R. Co. 35 W. Va. 492, 29 Am. St. Rep. 820, 14 S. E. 234, 7 Am. Neg. Cas. 126.

*Greenleaf, Bradford, & Nash,* for respondents.

Defendant must prove his claim as alleged or suffer a nonsuit with respect thereto, and he thereby waives his right to a nonsuit against the plaintiff showing a right, interest, lien, or encumbrance, even though the same is not in accord with the allegations of the complaint. Hooper v. Henry, 31 Minn. 264, 17 N. W. 476; Windom v. Schuppel, 38 N. W. 757; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434.

Under an escrow agreement, where there is a duty to be performed by each party, one party may waive the performance of the conditions by the other, and he does so waive by demanding a delivery of the escrow when a condition in his favor to be performed by the other party has not been performed. Hoyt v. McLagan, 87 Iowa, 746, 55 N. W. 18; Bradbury v. Davenport, 120 Cal. 152, 52 Pac. 301; Tharaldson v. Everts, 87 Minn. 168, 91 N. W. 467.

Appellant took with full knowledge of respondents' rights; he was guilty of fraud, and should not be permitted to profit by his own wrong, and justice required that delivery should take effect as of the date of delivery of the escrow. Conneau v. Geis, 73 Cal. 176, 2 Am. St. Rep. 785, 14 Pac. 580; McDonald v. Huff, 77 Cal. 279, 19 Pac. 499; Marr v. Rhodes, 131 Cal. 267, 63 Pac. 364; 4 Kent, Com. 454; Devlin, Deeds, § 328; Shirley v. Ayres, 14 Ohio, 307, 45 Am. Dec. 546; Brown v. Austen, 35 Barb. 341; Whitfield v. Harris, 48 Miss.

710; Hall v. Harris, 40 N. C. 303; Whitmer v. Schenk, 11 Idaho, 702, 83 Pac. 775; Simpson v. McGlathery, 52 Miss. 723.

The fact that the court invoked the legal fiction of relation in furtherance of justice does not render the title any less the legal title. Nash v. Northwest Land Co. 15 N. D. 566, 108 N. W. 792.

The term "fee simple" has never been used to distinguish between legal and equitable estates. It merely defines the largest estate in lands. Loventhal v. Home Ins. Co. 112 Ala. 108, 33 L.R.A. 259, 57 Am. St. Rep. 17, 20 So. 419; Gaylord v. Lemar F. Ins. Co. 40 Mo. 13, 93 Am. Dec. 289; Mitchell v. Black Eagle Min. Co. 26 S. D. 260, 128 N. W. 159, Ann. Cas. 1913B, 85; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434.

Goss, J. The complaint is in the usual form of an action to quiet title, alleging plaintiffs to be the owners in fee of the 400 acres involved. The relief sought is confirmation of title in plaintiffs and possession, and $2,000 for use and occupancy, and general equitable relief. The answer claims title in defendant and demands a dismissal. A jury was used and a general verdict was found for plaintiffs. In addition thereto the court filed findings and conclusions. Judgment was rendered in the plaintiffs' favor quieting title in them to the land, and awarding them judgment in the sum of $750 damages. Motion for new trial was made, based upon errors of law occurring at the trial and insufficiency of the evidence to justify the verdict and findings. Defendant appeals from both the judgment rendered and the order denying a new trial.

In brief, the facts are that both parties to this action are real estate dealers operating at Minot, the plaintiffs through the Brush-McWilliams Company, managed by H. J. Halvorson. In April, 1912, Frank Havlicheck and wife owned the real estate the subject of this suit. On the 8th of that month they entered into a written agreement with Thornhill for the sale to him of the land and all the personal property thereon for a consideration of some $6,900 and the further transfer to them of an 80-acre tract in Illinois, and stipulating that the Illinois tract should be examined by one Voitan, a son-in-law of Havlicheck, and if found as stated the contract should be "binding and in full force and effect." The contract provided as to the money considera-

tion as follows: "In consideration thereof the second party (Thornhill) covenants and agrees to pay the sum of $3,000 in cash, $1 of which is paid and receipt whereof is hereby acknowledged; as a consideration of the performance of this contract, said second party shall assume and pay one mortgage for $3,300 due 1917, drawing 8 per cent interest, and one mortgage for $600 due 1915, drawing 9 per cent interest."

Soon after the execution of this preliminary agreement, Voitan inspected the 80-acre tract in Illinois, and on return made a favorable report to Havlicheck. Further papers were then executed. These consisted of a warranty deed by Bob Willets and F. C. Thornhill, as grantors, to Frank Havlicheck, as grantee, purporting to convey the Illinois 80-acre tract. On the same date, April 15, 1912, Havlicheck and wife executed to plaintiffs a bill of sale of the personal property on the farm and also their warranty deed to plaintiffs of the farm. These deeds and bill of sale, together with the preliminary agreement of purchase and sale, were placed by the Brush-McWilliams Company, acting as agent of the plaintiff, in the Second National Bank of Minot. The following written statement, agreed to by the parties, accompanied the deposit of said papers, *viz.:* "We herewith deliver to you to be held in escrow the following papers, to wit: (the preliminary agreement, bill of sale, and two warranty deeds above mentioned are here described). The above papers to be delivered to the parties who are entitled to same upon performance of the agreements set forth in the agreement dated April 8, 1912, first above mentioned." (This has reference to the preliminary agreement of purchase and sale.) "In addition to the agreement first above described, it is agreed and understood that there is a $700 mortgage to the Second National Bank of Minot, North Dakota, dated April 3, 1912, due October 1st, 1912, drawing 12 per cent interest, made by Frank Havlicheck and Mary Havlicheck, which is to be paid by Havlicheck and released immediately." No money was deposited or paid, other than the initial payment of $1, mentioned in the preliminary contract. Said contract contained no stipulation as to when the $3,000 in cash should be paid, nor did it contain any provision as to examination of abstracts of title that the parties therein contracted to furnish. Subsequent to the deposit of these papers in the bank, Thornhill procured title by deed on

April 23d, 1912, to the Illinois 80-acre tract. On May 6, 1912, recognizing that the deed of Bob Willets and F. C. Thornhill of April 15, 1912, to Frank Havlicheck, was not signed by the wife of Willets, plaintiffs caused a new warranty deed to the Illinois tract to be executed by Robert W. Willets and wife and Fred C. Thornhill. This deed was deposited with the Second National Bank by the agent of the Brush-McWilliams Company, together with a check for $3,000, dated May 11, 1912, payable to the order of the Second National Bank, signed by "Willets & Thornhill, by F. C. Thornhill," and drawn on "D. A. Bridgeford & Company, Farmers Bank, Joy, Illinois," and indorsed by "Brush-McWilliams Company, E. A. Long, Sec'y." On the same day there was served upon Havlicheck and wife a notice subscribed by Willets and Thornhill stating that they were "now ready to close the deal between themselves and you, the papers in which were deposited in escrow in the Second National Bank of Minot, North Dakota, heretofore, and you will be at the Second National Bank at 10 o'clock A. M. on Saturday, May 11, 1912, so that the matter can be fully closed up." Havlichecks did not appear, however, as they had on April 19th, two days after the deposit of the so-called escrow agreement with the bank, executed and delivered for a cash consideration paid them their warranty deed to the land in controversy to the defendant, Jourgen Olson, as grantee, and which deed was that day filed for record. Without cashing the check for $3,000, treating the same as cash, the bank delivered to plaintiffs the deed of Havlicheck and wife to plaintiffs. This deed was placed on record May 11th. On or shortly after April 19th, 1912, plaintiffs, learning of Olson's purchase of this land, caused a written notice signed by F. C. Thornhill, to be served upon Olson. It reads: "You are hereby notified that the undersigned holds a contract for deed, dated April 8, 1912, executed and delivered by Frank Havlicheck and Mary Havlicheck, his wife, to F. C. Thornhill, by the terms of which the said Frank Havlicheck and Mary Havlicheck have agreed, in writing, to convey by warranty deed unto the said F. C. Thornhill (now follows the description of the land), and you are notified that any and all interest, right, or title you acquire in said premises you take *subject to the equities of the undersigned under and by virtue of said contract for deed.* You are further notified that said contract covers a contract

for sale of certain personal property (now follows the description of the personal property), said property being situated on the above described real estate. Dated this 19th day of April A. D. 1912." This notice is significant in view of the fact that it amounts to a construction of the escrow arrangement contemporaneous with that agreement. It is dated two days after the deposit of the papers with the bank.

In its instructions to the jury the court left as a fact for its determination the matter of whether the plaintiffs "have complied with all the conditions of the contract entered into between plaintiffs and Frank and Mary Havlicheck relating to the sale and purchase of the real estate in question." It then instructed that, "if you find that plaintiffs have complied with all the conditions of the contract between plaintiffs and Frank and Mary Havlicheck, and further find that defendant at the time he received the deed from Frank and Mary Havlicheck did know of the making of the contract between Frank and Mary Havlicheck and the plaintiffs, or had notice thereof sufficient to place a prudent man upon inquiry, and before the payment by defendant of the $3,900, then your verdict must be for the plaintiff." The right of recovery was made to depend upon whether defendant had notice of the escrow arrangement. As the jury found for the plaintiffs, it must be assumed for the purposes of this decision that defendant had notice of such deposit and bought subject to the rights of plaintiffs thereunder.

Defendant strenuously insists, first, that plaintiffs must recover upon the strength of their own title, and not upon the weakness of that of their adversary, and, second, that in order to recover as owners or at all, they must establish that title vested in them by a valid delivery of the Havlichecks' deeds deposited in escrow; and defendant asserts that a valid delivery has never been had, inasmuch as a full performance on the part of the plaintiffs of the escrow agreement has not only not been shown, but that the evidence conclusively establishes nonperformance of that agreement in that delivery of the Havlicheck deed to the plaintiffs, as made by the depositary, was unauthorized and void, and did not and could not clothe plaintiffs with title; and that therefore plaintiffs have no title and cannot maintain this action. To quote from the brief of appellant: "At the time of the deposit on April 17, 1912, the plaintiffs had three things to do, namely, pay

$3,000 in cash, deliver a new deed, and furnish an abstract of title to the lands conveyed by such deed. The doing of those things would constitute performance on their part. . . . In the case at bar there cannot be found in the original contract between Havlicheck and the plaintiffs, nor in the memorandum filed with the depositary, the slightest intimation of the purpose to confer on the depositary any power to pass on the sufficiency of the plaintiffs' deed or of the abstract of title to the Illinois property, nor is there anything at all to indicate that plaintiffs were to deposit anything with him, either the money, deed, or abstract. He was simply authorized to deliver the papers named to the parties who are entitled to the same upon performance of the agreement. The agreement requires the payment to Havlicheck of $3,000 *in cash,* the delivery to him of a deed and abstract of title to the Illinois land. Now, can we read into these exhibits authority to the bank to do what it did in this case? accept a check from unknown parties on an unknown bank—no matter how well indorsed—in lieu of cash; a deed not in the usual form of conveyances made in this state conveying land in another state; an abstract of title on the sufficiency of which even an attorney would not undertake to give an opinion, and all this without even conferring with the persons whose property it attempted to dispose of by the immediate delivery to the plaintiffs of the deed to that property?" The question of performance is thus raised, and nonperformance is asserted.

Neither the agreement of sale nor the memorandum of the escrow agreement clothes the depositary, the bank, with the power to make a new agreement with either party to the escrow arrangement, such as was in fact made when the bank elected to receive, instead of cash, a chose in action. It is true it asserts that it received this as cash, and would pay the cash on it, a matter wholly immaterial inasmuch as no act of its was called for under the contract; nor could it thus supplement and so perform the agreements covenanted to be done by plaintiffs. Assume that the depositing of the papers with the bank would be held as an authorization of the deposit of the money at that place in lieu of the papers delivered, still the fact remains that a check for $3,000 is not $3,000 in cash, nor does it demonstrate that plaintiffs could comply with their agreement and pay $3,000 cash. In the law governing performance of escrow agreements, there is no doctrine of

substantial compliance to be found. Compliance must be full and to the letter, or else constitute but noncompliance. The principle must not be ignored that the parties to the escrow agreement have accurately defined the conditions under which the legal delivery, technically known as the second delivery, by the depositary, shall take place. Until exact compliance with such stipulated conditions is had, the deed is presumed, if delivered, when legality of delivery is challenged on such grounds, to have been wrongfully delivered, some cases going to the extent of treating it on the basis of a stolen deed. The gist of the question is that by the escrow agreement the grantor thereby states the conditions *precedent,* upon full performance of which *only* he consents to the second delivery of his deed; and as it is such second delivery that causes the divestiture of his title, he thus stipulates for the conditions precedent under which only he consents to the delivery and thereby the parting with his title to the grantee. Conversely, his consent is, by the terms of his stipulation, the escrow agreement, withheld until such full compliance. A deed delivered without consent passes no title, as the delivery is as essential to the passing of title as is the existence of the written deed itself. Consequently, as between the parties to an escrow agreement, the grantee in a deed so delivered must show compliance with the escrow agreement before a valid delivery is established and title thereunder is shown to have been vested. And the depositary is the agent of both parties, neither for one more than the other, but is empowered to aid neither, being merely the conduit used in the transaction for convenience and safety. Some authorities term the depositary under an escrow agreement as the special agent of both parties, with powers limited only to those stipulated for in the escrow agreement. His powers are thus limited, however he may be termed. Hence, it was not within the power of the bank by its act to aid plaintiffs in their performance by saying that it, a mere depositary, and powerless except to receive the money at the most, would treat the check as cash, or on Havlicheck's demand pay cash on the check to him, something it was under no obligation to do unless he himself first elected to treat the check as cash, something he never has done. Certainly the bank could not make such election for him. The principles of law are the same whether a financial institution or a pauper be chosen as the depositary. The powers of either cannot ex-

ceed those conferred by the escrow agreement. This case involves nothing analogous to the doctrine of equitable performance, wherein it has been held that a party refusing to perform and convey where checks or drafts are tendered in payment must refuse on the specific ground of their not amounting to cash, or be held to waive it. North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466-478, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453; McCulloch v. Bauer, 24 N. D. 109, 139 N. W. 318; McVeety v. Harvey Mercantile Co. 24 N. D. 245, 139 N. W. 586, Ann. Cas. 1915B, 1028; Wells, F. & Co. v. Page, 3 L.R.A.(N.S.) 103, and note (48 Or. 74, 82 Pac. 856). Such cases turn on the proof of ability to perform, instead of, as here, on the fact of performance or nonperformance. We are not concerned with the ability of the plaintiffs to have paid $3,000, nor with whether this check might not have been cashed or been convertible into cash. Instead, notwithstanding their ability may be presumed, delivery of the deed has not been had, because the condition precedent to its delivery did not turn on that question, but instead was dependent upon performance by the payment of the cash, a condition which the depositary was powerless to alter. True, plaintiffs could have borrowed $3,000 of the depositary bank as a separate transaction, had it, as a bank and independently, loaned it to plaintiffs, and said amount then left with the bank would no doubt have constituted performance so far as a cash deposit was concerned. But this was not the legal effect of what was done, as, no doubt, might have developed had this check been transmitted to the bank on which it was drawn and had it gone to protest. It was a simple matter to say that this check would have been treated as cash, as the bank cashier testifies. H. had the right to have the cash there, instead of something that the bank might term, and credit convenience might consider, "equally as good" as cash. For plaintiffs the check is better than cash for they still possess the cash in lieu thereof. The consent to the delivery of the deed, made by the depositary, was never given by the Havlichecks, inasmuch as the conditions upon which they would consent to a delivery had never been complied with, and the deed therefore, as between the parties to this action, challenged on that ground, is void. Tiffany, Real Prop. § 406: "An escrow is, it has been held, utterly invalid to transfer any rights until the performance of the condition,

so that, if the person with whom it is deposited wrongfully yields possession thereof to the grantee, it cannot transfer any title;" citing Smith v. South Royalton Bank, 32 Vt. 341, 76 Am. Dec. 179; Hinman v. Booth, 21 Wend. 267; Calhoun County v. American Emigrant Co. 93 U. S. 127, 23 L. ed. 827; Heney v. Pesoli, 109 Cal. 53, 41 Pac. 819; Taft v. Taft, 59 Mich. 195, 60 Am. Rep. 291, 26 N. W. 426 (opinion by Justice Campbell); Harkreader v. Clayton, 56 Miss. 383, 31 Am. Rep. 369; Jackson v. Rowley, 88 Iowa, 184, 55 N. W. 339; Ober v. Pendleton, 30 Ark. 61; Black v. Shreve, 13 N. J. Eq. 458; Everts v. Agnes, 4 Wis. 343, 65 Am. Dec. 314. See also Artcher v. Whalen, 1 Wend. 179; Jackson ex dem. Gratz v. Catlin, 2 Johns. 248, 3 Am. Dec. 415, affirmed in 8 Johns. 520, holding that the condition must not only be performed within a reasonable time, but by the particular party specified in the agreement. These authorities are elaborately reviewed in Taft v. Taft, 59 Mich. 195, 60 Am. Rep. 291, 26 N. W. 426, as is also the doctrine of relation urged by respondent, but which is of no concern; inasmuch as no title ever vested in the plaintiffs the doctrine of relation need not be discussed. From the syllabus in Everts v. Agnes, 4 Wis. 343, 65 Am. Dec. 314, we quote: "Delivery of an escrow, to be valid, must be with assent of grantor; if its delivery is made to depend upon the performance of certain conditions, his consent is withheld until such performance." "If the grantee obtains possession of the escrow without the performance of the conditions, he acquires no title thereby." "Depositary of escrow is as much agent of grantee as of grantor. If he delivers escrow before the proper conditions have been performed, he cannot be said to have done so as the agent of the grantor. To obtain escrow from depositary, without performing conditions upon which it was to be delivered, is as much against the assent of the grantor as it would be to take it from the desk or drawer where the grantor had deposited it, without his knowledge or consent." In Tiedeman on Real Property, 3d ed. § 579, it is stated: "A delivery before the performance of the condition will not have the effect of passing the title to the grantee, not even against innocent purchasers for value of the grantee." "Escrows can operate only from the time that the condition is performed;" citing, besides some of the above cases, Chipman v. Tucker, 38 Wis. 43, 20 Am. Rep. 1; Houston Land & T. Co. v. Hubbard, 37 Tex. Civ.

App. 546, 85 S.W. 474; Sutton v. Gibson, 119 Ky. 422, 84 S. W. 335; Wisconsin & M. R. Co. v. McKenna, 139 Mich. 43, 102 N. W. 281. "An instrument delivered in violation of the terms on which it has been placed as an escrow is not in fact delivered, and that its possession by the grantee is no more effective to convey title than would be the possession of a forged or stolen instrument. Some authorities proceed upon the theory that a depositary is a special agent of the depositor, and therefore, his powers being limited to the conditions of the deposit, one who claims through him takes the risk of the agent exceeding his powers," 16 Cyc. 582. "If the deed is delivered before the previous condition is performed, it will not be the deed of the grantor, or have any effect as such.  .  .  .  'The delivery, to be valid, must be with the assent of the grantor; if the grantee obtained possession of the escrow without performance of the condition, he obtains no title thereby, because there has been no delivery with the assent of the grantor, which assent is dependent upon compliance with the condition.' " Washb. Real Prop. § 2180. Continuing as to the relation of the depositary, the author says: "The depositary of an escrow was as much agent of the grantee as of the grantor. 'He is as much bound to deliver the deed on performance of the condition as he is to withhold it until performance.' And, being thus in the hands of the agent of the grantee, the deed takes effect the moment the condition is performed, without any formal delivery into the hands of the grantee;" citing Shirley v. Ayres, 14 Ohio, 308, 45 Am. Dec. 546. See also 11 Am. & Eng. Enc. Law, 2d ed. 345–349, that "the grantee or other party who is to receive the benefit of the instrument cannot acquire the title by gaining possession of it by theft, by fraud, or by the voluntary act of the depositary, but only by the performance of the condition or the happening of the contingency." In the note to page 349 it is stated that "a literal compliance with condition is necessary." See also Patrick v. McCormick, 10 Neb. 1, 4 N. W. 312; Schmidt v. Musson, 20 S. D. 389, 107 N. W. 367; Matteson v. Smith, 61 Neb. 761, 86 N. W. 472; Daggett v. Daggett, 143 Mass. 516, 10 N. E. 311. In fact there seems to be no authority to the contrary. Respondents' brief cites none. The main payment of $3,000 cash, called for by the contract, and the only cash payment stipulated for, has never been made to the depositary. This stands admitted. Defendant urges non-

performance and is in position to make that defense. Only one conclusion can be reached, and that is that no valid delivery of the Havlicheck deed has been had, and that plaintiffs have neither title nor vestige of title upon which to base their action, not maintainable without proof of title in them. There was no proof of performance for submission to the jury, hence their finding is a nullity.

It appears conclusively that plaintiffs cannot recover relief in this form of action, and upon the theory upon which the same has been tried, the record establishing that no title can ever be shown in plaintiffs, and without which as a basis plaintiffs cannot recover. This appellate court is confronted with the fact that this action, though in equity, is here on appeal taken as in a law case. It is therefore limited to a review of errors of law, instead of empowered to try the issues *de novo*. Peckham v. Van Bergen, 8 N. D. 595, 80 N. W. 759; Merritt v. Adams County Invest. Co. 29 N. D. 496, 151 N. W. 11. The theory upon which the trial and appeal have been had has been adopted, and accordingly judgment will be directed as in an action at law, where the right of the plaintiff to ever recover is by the proof conclusively negatived. It is therefore ordered that the judgment, verdict, findings, and conclusions entered, be set aside and vacated, and a judgment be entered dismissing this action, but without prejudice, however, to plaintiffs' right to maintain another action to enforce any right which they may have had under the contracts.

CHRISTIANSON, J. (dissenting). I cannot agree to the legal principles announced by my associates in this case. This action was brought to determine adverse claims under the provisions of chapter 31 (§§ 8144–8165) of the Code of Civil Procedure of the Compiled Laws of 1913. The complaint is drawn in strict conformity with the form provided by § 8147, Compiled Laws, and the prayer for judgment demanded involves all six of the grounds provided for in the prayer for judgment in this section. The complaint alleged that the plaintiff was the owner of the premises, and in the fifth subdivision of the prayer for judgment asked for $2,000 damages for the use and occupancy of the premises. The defendant in his answer, after denying the allegations of the plaintiff's complaint, further alleged "that he is the owner in fee of the real estate described in the complaint,

having purchased the same from Frank Havlicheck, the owner thereof, and that possession of the said premises was delivered over to him at the time of the purchase by the said Frank Havlicheck," and prayed for judgment that he be adjudged the owner in fee of the premises, and that plaintiffs be decreed to have no right, title, or interest therein, and be enjoined from further asserting the same. It is true as stated in the majority opinion that upon the request of the defendant, certain issues were submitted by the trial court to a jury. The only questions submitted were whether or not the plaintiffs had complied with their part of the agreement with Havlicheck, and the value of the rents and improvements. The jury returned a verdict in favor of the plaintiffs, and also found the value of the use and occupancy of the land to be $750. The court thereupon made findings of the fact and conclusions of law the same as in an action in equity, and judgment was entered pursuant to such findings and conclusions. The answer of the defendant asserting title in himself and asking for affirmative judgment was a counterclaim. Power v. Bowdle, 3 N. D. 107; 21 L.R.A. 328, 44 Am. St. Rep. 511, 54 N. W. 404; Betts v. Signor, 7 N. D. 399, 75 N. W. 781. Section 8153, Compiled Laws, provides: " . . . A defendant interposing a counterclaim shall, for purposes of trial, be deemed plaintiff, and the plaintiff and codefendants against whom relief is sought, shall be deemed defendants as to him. The court in its decision shall find the nature and extent of the claim asserted by the various parties, and determine the validity, superiority and priority of the same." It was the duty of the court to determine and adjudicate the claims set forth in defendant's answer, even though plaintiffs' cause of action might fail. Reichelt v. Perry, 15 S. D. 601, 91 N. W. 459. Spencer v. Beiseker, 15 N. D. 140, 107 N. W. 189. Whether or not the action is to be regarded as a legal or equitable action must be determined by the pleadings, and under the issues framed by the pleadings, this is an equitable action. Mitchell v. Black Eagle Min. Co. 26 S. D. 260, 265, 128 N. W. 159, Ann. Cas. 1913B, 85; Tracy v. Wheeler, 15 N. D. 248, 249, 6 L.R.A.(N.S.) 516, 107 N. W. 68; Powers v. First Nat. Bank, 15 N. D. 466, 470, 109 N. W. 361. While a jury may be called to try certain or all issues of fact, the verdict is advisory only, and it still remains an action in equity. Reichelt v. Perry, 15 S. D. 601, 91 N. W. 459; O'Neil v.

31 N. D.—7.

Tyler, 3 N. D. 47, 53 N. W. 434; Spencer v. Beiseker, 15 N. D. 140, 107 N. W. 189. The fact that the trial court considered this an action in equity is apparent from the fact that findings of fact and conclusions of law were prepared and signed by the trial court, and the judgment in the case was entered pursuant thereto. It is true, the trial court adopted the verdict of the jury, but this did not change the case to an action at law. In the majority opinion it is said: "This appellate court is confronted with the fact that this action, though in equity, was tried as one at law, and with an appeal taken as in the law case." This fact, however, in no manner changed the form or scope of the action. This court has held that in an equity case, where the district court calls in a jury for advisory purposes, that an appeal to this court cannot be taken under the provisions of the so-called Newman act. Peckham v. Van Bergen, 8 N. D. 595, 80 N. W. 759; Spencer v. Beiseker, 15 N. D. 140, 107 N. W. 189. Hence, surely no inference can be drawn that the scope of the action is limited by the fact that the appeal was taken as in an action at law.

One of the propositions which is most earnestly contended for by appellant in this case is that the plaintiffs had mistaken their remedy, and that their proper remedy would be to bring an action for specific performance. It seems to me that this reasoning is fallacious and entirely contrary to the provisions of the statute under which the action was brought. One of the principal objects intended to be accomplished by this form of action was to avoid a multiplicity of suits, and make it possible to have the estates and interests of the various persons claiming adversely to one another adjudicated and determined in one action. In such action the court may decree that plaintiff do equity by paying whatever sum is necessary, before granting equitable relief. Powers v. First Nat. Bank, 15 N. D. 466, 471, 109 N. W. 361. Judgment may be entered reforming deed, and foreclosing same as a mortgage. Murphy v. Plankinton Bank, 18 S. D. 317, 100 N. W. 614. The very purpose of the action, as defined by the legislature, is to determine adverse claims. The defendant has interposed a counterclaim,—alleging that he is the owner and that the plaintiffs have no interest in the premises. Defendant asked that a jury be called, and certain issues of fact tried to the jury. Can he now be permitted to say that because this favor was granted that the action

has been changed from an equitable to a legal action, or the scope of the action limited? I believe not. Under the express provision of the statute, the court, under the issues as framed by the pleadings in this case, should adjudicate "the nature and extent of the claims asserted by the various parties, and determine the validity, superiority, and priority of the same." Comp. Laws § 8153; Spencer v. Beiseker, supra. Mitchell v. Black Eagle Min. Co. 26 S. D. 260, 265, 128 N. W. 159, Ann. Cas. 1913B, 85. In my opinion all the rights and estates, both legal and equitable, of these parties, should be determined in this action, and even though it be conceded that the judgment should be reversed, still the action ought not to be dismissed, but remanded for a new trial in order that the proper proceedings might be had in the trial court.

Prior to the escrow agreement, the plaintiffs and the Havlichecks entered into executory contract whereby the Havlichecks agreed to convey the premises involved to the plaintiffs. "While there is a diversity of judicial opinion as to the relations existing between the parties to such a contract, the great weight of authority is to the effect that upon the execution of the contract the purchaser becomes the beneficial owner in equity, and the vendor retains the legal title in trust for such vendee." Woodward v. McCollum, 16 N. D. 42, 49, 111 N. W. 623. "Equity treats things agreed to be done as actually performed, and where real estate is sold under a valid contract, and the deed executed and placed in escrow, to be delivered at a future date on payment of the purchase money, evidenced by promissory note due on said day, the equitable title passes at once to the vendee." Fouts v. Foundray, 31 Okla. 221, 38 L.R.A.(N.S.) 251, 120 Pac. 960, Ann. Cas. 1913E, 301. This executory contract remained unaffected by the escrow agreement. Even though the delivery of the deed be held void, still the plaintiffs are the equitable owners of the premises, and the defendant, Olson, having purchased with notice, merely holds the legal title in trust for the plaintiffs. Plaintiffs' equitable title has been held sufficient to sustain their position in this action. Mitchell v. Black Eagle Min. Co. 26 S. D. 260, 267, 128 N. W. 159, Ann. Cas. 1913B, 85; Collins v. O'Laverty, 136 Cal. 31, 35, 68 Pac. 327. But even though plaintiff's title was insufficient, still under the issues tendered by defendant's answer claiming

title in himself, the rights of these parties could and should be determined in this action.

Nor do I agree that the failure on the part of the plaintiffs to pay $3,000 in currency is such departure from the terms of the escrow agreement as will avoid the delivery of the deed to the plaintiffs. In the usual course of commercial transactions, actual currency is seldom used, and even in cases where a tender or deposit is required to be made in currency, it may be done by check unless specific objection is made thereto. Comp. Laws, § 5816; North Dakota Horse & Cattle Co. v. Serumgard, 17 N. D. 466, 29 L.R.A.(N.S.) 508, 138 Am. St. Rep. 717, 117 N. W. 453; Ugland v. Farmers' State Bank, 23 N. D. 536, 137 N. W. 572. It is true that it is a rule of law that where an instrument is deposited as an escrow, it cannot be operative until the conditions or the event stipulated upon is performed or has happened. But in applying this rule, it should be borne in mind that it was laid down nearly four centuries ago, and that while it has been adhered to since that time, and remains a correct statement of an abstract principle of law, still the conditions under which it was formulated no longer exist, and it should be construed in accord with the conditions of to-day. "When the reason of a rule ceases, so should the rule itself." "The law respects form less than substance." These are among the maxims of our jurisprudence. In the days when this rule was formulated, a payment meant payment in money. To-day, in commercial transactions the actual currency is rarely used, and, as indicated by this court in the two decisions cited above, a check drawn upon a solvent bank, where the drawer has ample funds on deposit so it will be paid on presentation, is for every purpose as good as cash.

Havlicheck never called for the money. If he had it would have been paid to him, and the papers delivered to him. In what manner was he prejudiced? If he had gone to the depositary, he would have received exactly what he claims to be entitled to receive under the escrow agreement. It appears that no objection was made to the fact that the payment was made by check, and in view of the fact that the bank accepted the check and treated it as cash, and stood willing and ready to pay to Havlicheck the full amount thereof in cash at any time he called for it, it seems to me to be indeed a highly technical

and unjust rule to say that this alone avoids the delivery of the deed. "Where the obligee may fairly be said to have performed his part, although not all the conditions have been complied with, the delivery will be sometimes upheld, if no real injury is caused thereby." 16 Cyc. 577. In Boyd v. American Sav. Bank & T. Co. 40 Wash. 571, 82 Pac. 904, the syllabus reads: "Where the assignee of the prospective purchaser of stock in escrow made arrangements with the holding bank whereby drafts of the prospective seller, drawn on the payments which by the escrow agreement were to have been made to the bank for the prospective seller's credit, should be honored, and the seller was informed by the bank that, when he drew, the amount due would be placed to his credit, and prior to any declaration of forfeiture the amount due was in fact so deposited to the seller's credit, there was a substantial compliance with the contract, so as to prevent a forfeiture, though at the time the seller was informed of the arrangement there were payments overdue under the contract."

In this case the depositary was a responsible financial institution. And there can be absolutely no question but that Havlicheck could have had his $3,000 in cash any time he might have asked for it.

The assistant cashier of the bank testified as follows:

This check was presented to us by Willets & Thornhill for the purpose of complying with this agreement.

Q. And it was received by you as such?

A. We would have paid the money at any time.

Q. Mr. Byorum, after the receiving of this check, "exhibit 7," by you, were you ready at all times, was the bank ready at all times, to turn over the amount to the parties entitled thereto under the contract?

A. It was.

Q. And did you receive that check as cash?

A. We received it the same as cash.

Q. Ready to pay the cash any time it was demanded?

A. Yes, any time it was demanded.

The trial court and jury found that the defendant took title with full knowledge of the rights of the plaintiffs, and that the plaintiffs had performed their part of the escrow agreement, and it seems to me that this holding is correct; but even though it is not, this case should

not be dismissed, but remanded for a retrial in the district court, as all the rights and estates of the parties can and ought to be determined in this action. I am authorized to state that Justice Burke concurs in this dissent.