DE GARMO v. KAY et al.

No. 3192.   Decided May 2, 1918.   (173 Pac. 129.)

1. BILLS AND NOTES—INNOCENT PURCHASERS—EVIDENCE.  Evidence *held* to show that plaintiff was not the holder of the note in due course for value.   (Page 237.)

2. BILLS AND NOTES—DUE COURSE—FRAUD.  One who acquired a note with full knowledge that the makers intended it to be held in escrow by a trust company until they were released from liability on another note was not an innocent purchaser.   (Page 237.)

3. ESCROWS—VIOLATION OF TERMS—EFFECT.  Where parties to exchange of realty agreed to various deposits in escrow, and defendants deposited two notes, one of which was to be held until liability on another was released, and plaintiff wrongfully obtained it, and refused to permit credit of amount later paid, and claimed the entire note, he could not recover, though he had legal title.   (Page 238.)

Appeal from District Court of Salt Lake County, Third District; *Hon. H. M. Stephens,* Judge.

Action by G. C. De Garmo against W. O. Kay and another.

Judgment for defendants after trial without jury, and order denying new trial.   Plaintiff appeals.

AFFIRMED.

*Aaron Myers* and *Cheney, Jenson & Holman* for appellant.

*Dey, Hoppaugh & Fabian* for respondents.

CORFMAN, J.

This was an action brought by plaintiff against the defendants to recover an amount alleged to be due and owing on a promissory note.   The complaint was in the usual form, alleging execution and delivery by the defendants for a valuable consideration of a note for $5,000, payable six months after date, with interest at five per cent. per annum from date until

paid, and an attorney's fee in case of suit, to one Marshall E. Pope, who, for a valuable consideration, by indorsement "without recourse," passed the same to the plaintiff, the present holder and owner thereof. The answer admitted the signing of the note by defendants; denied delivery; denied the ownership of plaintiff; and affirmatively alleged failure of consideration with knowledge on the part of the plaintiff. Trial was had to the court without a jury, and the issues were determined in favor of the defendants. Motion for a new trial was made and denied. Plaintiff appeals.

The note sued upon had its origin in a real estate transaction from which it appears that on December 21, 1915, the Tropical Investment Company, a corporation controlled by defendants, made an offer in writing to purchase an apartment house known as the Morris Hotel, in Los Angeles, Cal., and to pay therefor (1) a ranch in Madera county, Cal., (2) the Jarnell apartment house in Los Angeles, (3) 168 shares of the stock of the La Mesa Homes Company, a corporation, (4) $10,000 in cash, and the $5,000 note in question. The offer was made to one William W. Paden, agent, who for himself, one M. E. Pope, the plaintiff, De Garmo, and others interested in the Morris Hotel, as owners, creditors, and otherwise, accepted. Some of the properties involved in the deal, on both sides of the transaction, were incumbered. Of the property offered by the defendants through the Tropical Investment Company the Madera County ranch had a mortgage on it for $60,000, the Jarnall Apartments for $27,500, and of the 168 shares of the capital stock of the La Mesa Homes Company 100 shares were held by one A. L. Ross, of San Diego, as collateral security for the payment of three notes of $2,500 each, one executed by the Tropical Investment Company, and two by the defendants Kay and Miller. The Morris Hotel was subject to a trust deed for $80,000, was under lease, and held subject to claims of certain creditors, some of them represented by the plaintiff, De Garmo. For the purpose of carrying on the transaction between the parties and consummating the same the defendants, on the 22d day of December, 1915, caused to be deposited with the Title Guaranty & Trust Com-

pany of Los Angeles (hereinafter referred to as the trust company) an escrow; and under the escrow there was deposited, with other papers not necessary to mention here, the $5,000 note of the defendants made payable to M. E. Pope, with also a reference to the 168 shares of stock of the La Mesa Homes Company, "subject to $7,500, of which 100 shares is held as collateral security." However, it appears, so far as the future delivery of the stock and the note was concerned, that matter rested in the parol agreement between the defendants and Paden, representing the interested parties in the transaction. When the escrow was first made and placed with the trust company, it seems that the shares of stock of the La Mesa Homes Company were not deposited for the reason that they were then in the possession of Ross, being held by him as collateral security for the payment of the $7,500 notes of the defendants and the Tropical Investment Company. However, we think the record conclusively shows that Paden, as a part of the transaction, was obliged to pay and discharge the $7,500 indebtedness owing on the notes. In January, 1916, the defendant Kay and Paden again met in Los Angeles, and Paden represented to Kay that he thought that the deal was blocked on account of his (Paden's) inability to raise sufficient funds to pay one of the Ross notes then past due. At this time it was decided between Kay and Paden that a new escrow should be arranged for in order that they might go forward with the transaction and consummate the deal. Concerning the making of the new arrangements the defendant Kay testified:

"I met Mr. Paden, and he told me the deal was stalled on account of not having been able to get $2,500 to pay the past-due Ross note; and he told me if we could arrange some way to get rid of that La Mesa stock and the Ross notes and the Madera ranch, and deliver the Jarnell apartment house and the ten thousand dollars in money, that he could make the trade on the Morris Hotel, and make a second escrow, and put in the Madera ranch and the Ross notes and the La Mesa stock and five thousand dollars; so we fixed that up a few days later. This conversation and the negotiations then

resulted in the new escrow of January 27th. In this way we got rid of the objectionable features in order to close the deal up. At this time he agreed to take up the stock and pay the Ross notes within fifteen days if I would consent to the separating (supplying) of that escrow and the transfer of the Jarnell property and make a new escrow."

A new escrow was arranged for with the trust company under date of January 27, 1916, with instructions from the defendants relative to the $5,000 note and the stock of the La Mesa Homes Company, as follows:

"I will hand you 168 shares La Mesa Homes stock, a note $5,000 signed by Kay & Miller in favor of Marshall Pope, and a deed of the Madera County property, which you are to deliver within fifteen days from date, when you hold for me three notes $2,500 each, signed by W. O. Kay, R. E. Miller, and the Tropical Inv. Co., in favor of A. L. Ross. * * *"

On the same date Paden filed instructions with the trust company as follows:

"Will hand you three notes of $2,500 each, one signed by W. O. Kay, one by Tropical Inv. Co., and one by R. E. Miller in favor of A. L. Ross, which you are to deliver to W. O. Kay within fifteen days from date when you obtain for me a deed to the Madera County property. * * *"

It appears that Paden continued to fail to pay the defendants' notes to Ross for $7,500 and a few days later Paden represented to the defendant Kay that he was still unable to pay the Ross note of $2,500, and suggested that the defendants help him out in the matter, as again the deal was about to fall through. Concerning this the defendant Kay testified:

"A day or two after he (Paden) saw me on the street and told me he was still up against it to get the money to pay that $2,500 past-due note, and asked me if I could figure out some way to help him on it to raise $2,500; and I suggested, in order to help the deal, if he would let me apply $2,500 on the La Mesa $5,000, and agree to take up the other two notes, that I would go to Salt Lake and do my best to raise $2,500. He told me that Mr. De Garmo was interested in the matter and he would have to see him. Either that day or the next we

were talking, and he said it was satisfactory to Mr. De Garmo, and he arranged to have a meeting between Mr. De Garmo and myself over at Mr. Reimer's office, the head man of the trust company. Q. Do you remember what date that was? A. I think it was about January 31st. Q. Now, did you ever meet Mr. De Garmo before? A. Not before that time. Q. Did you know, until Mr. Paden told you about it, that Mr. De Garmo was in any way interested in the transaction? A. Never heard of the gentleman before. Q. Now, state what other transaction took place at the meeting between you and Mr. Paden or between De Garmo— A. The very question was, it was a difficult thing, and I told Mr. De Garmo that Mr. Paden was up against it on account of the $2,500, and he said he understood that, and he said it would be all right if I would get the money by the 7th and pay it on the 7th. I told him I expected to go home that afternoon or the next day, and I would arrange to pay it by the 7th. Well, the next day—the next day something— Q. Well, wait a minute. Did you talk over with Mr. De Garmo the terms of the escrow at all at that time? A. Sure. I told him, in view of the fact that he was taking Paden's place, he would have to assume the Ross deal or I would not go through with the deal. I didn't have to go through. I had the hotel. I told Mr. De Garmo, if he would take care of those two notes the same as Mr. Paden had agreed to do, I would go home and arrange in some way to get the $2,500. Q. What did Mr. De Garmo say to that? A. He said that was satisfactory."

Subsequent to the foregoing conversation between the defendant Kay, Paden, and the plaintiff De Garmo, the defendants, on January 31, 1916, caused to be filed with the trust company the following instructions under the newly arranged for escrow agreement:

"There will be handed you by T. G. & T. Co. a sight draft through National Bank of Republic, Salt Lake City, Utah, on W. O. Kay and R. E. Miller for $2,500. Provided said sight draft is honored you are to return to W. O. Kay a certain note of $2,500, dated October 15, 1913, in favor of A. L. Ross, said $2,500 to be paid to A. L. Ross, and you will then credit said

sum of $2,500 on the first above mentioned note of $5,000 as a payment on the principal thereof, and deliver said $5,000 note, bearing $2,500 indorsement, to G. C. De Garmo on February 7, 1916; and in the event said draft is not paid you will deliver said $5,000 note, without such indorsement of $2,500, to G. C. De Garmo, and hold above-mentioned note of $2,500 subject to the order of A. L. Ross. If said $2,500 is paid, deliver to W. O. Kay above-mentioned $2,500 note, dated October 15, 1913.''

Without defendants' knowledge, under date of February 1, 1916, the plaintiff, De Garmo, caused to be placed, under the escrow, with the trust company the following instruction:

''You will also hold a certain note for $5,000, dated January 1, 1916, due six months after date, made to Marshall E. Pope, * * * signed by W. O. Kay and R. E. Miller, and indorsed by Marshall E. Pope without recourse. In the event there is paid to you in this escrow $2,500 by said Kay or Miller, or both you will then credit said $5,000 note with said sum. Pay said $2,500 to A. L. Ross as per escrow.

''You will, on February 10, 1916, deliver to me only the above $5,000 note.''

The defendant Kay thereafter, on February 2, 1916, caused a sight draft for $2,500 to be drawn on the National Bank of the Republic of Salt Lake City through the trust company. This draft was transmitted for payment by the trust company through the Merchants' National Bank of Los Angeles, first to the California National Bank of Sacramento, Cal., and thence to the Utah National Bank of Salt Lake City, Utah. Meanwhile the defendant Kay had returned to Salt Lake City, and was not apprised of the fact that the draft had been so transmitted until February 7, 1916, when the draft was presented to him by the Utah State National Bank and promptly paid. On the same day, February 7, 1916, the defendant Kay addressed a letter to the trust company advising that the draft had been paid immediately on presentation; that the draft had not been transmitted to the National Bank of the Republic in accordance with instructions; that Mr. Reimer of the trust company had written to the National Bank of the Republic

that the draft had been drawn on the defendant Kay, but not-withstanding it had been immediately paid when improperly presented, and asked the trust company to indorse $2,500 on the back of the $5,000 note aforesaid, send $2,500 to Ross, and forward the $2,500 Ross note to defendants. The trust company failed to act upon these instructions. On February 11th following the plaintiff, De Garmo, called upon the trust company and demanded that the defendants' note for $5,000 be delivered to him. The note was then delivered to the plaintiff by the trust company. The trust company, on receipt of the returns from the draft paid by defendants to the Utah State National Bank on February 7th, so advised the plaintiff; but the plaintiff refused to return the $5,000 note of the defend-ants to the escrow with the trust company for indorsement, or to permit the amount of $2,500 to be credited thereon. Plain-tiff thereafter held the note, and brought this action to recover from the defendants the full face value, with interest.

The testimony bearing on the dealings involved in this action is not only somewhat voluminous, but the transactions between the parties were often conducted in not only a com-plicated but a confusing way. We have reviewed the entire record, and have endeavored to glean therefrom for the fore-going statement only the salient facts out of which the diffi-culties between the parties to the action have arisen. The briefs and arguments of counsel for the parties on both sides of the controversy have been exceedingly well prepared and very ably presented.

The principal contention of the plaintiff on appeal is that the trial court erred in its finding:

"Plaintiff is not the owner and holder of said written instrument in due course for value, or otherwise, but,      1, 2 on the contrary, wrongfully obtained possession thereof without any delivery on the part of the defendants or either of them."

As we view the record here, this finding is amply supported by the testimony, and the trial court was right, both as to the fact and as a matter of law. The plaintiff came into posses-sion of the defendants' note, not as an innocent purchaser for

value, but with knowledge that it was fully intended by the makers that it should be held by the trust company without delivery until the defendants were relieved of their obligation to pay the Ross note. The intent of the makers and understanding of all parties in that regard is manifest throughout the entire record. Moreover, a reading of the testimony convinces that the plaintiff not only understood but that he was consulted and agreed to the conditions under which the defendants' $5,000 note was being held under the escrow with the trust company; that as a condition precedent to its delivery from the escrow the overdue $2,500 note of defendants to Ross was to be the first paid, whether by money advanced by defendants and a credit given therefor on the $5,000 note before its delivery to the plaintiff or paid direct by Paden was immaterial. Paden testified:

"There were two escrows, one of which was recorded on. The stock, note, and a number of other matters were transferred to another number for disposition under new conditions. Under escrow No. 286131, Mr. Kay acquired the title to the Morris Hotel. But of course the disposition of the stock and the note was subject to the changed instructions which were placed in another escrow. *  *  * The Madera land, the La Mesa stock, and the $5,000 note were transferred to the new escrow under new conditions and instructions."

The "new conditions and instructions" were to the effect that Paden was to pay and discharge the Ross notes and relieve the defendants from those obligations. Plaintiff was a direct beneficiary, if not at all times an actual party, to the dealings of Paden with the defendants. The "changed instructions" directed to the trust company by the defendants under this new arrangement were:

"There will be handed you by T. G. & T. Co. a sight draft through National Bank of Republic, Salt Lake City, Utah, on W. O. Kay and R. E. Miller for $2,500. Provided said sight draft is honored, you are to return to W. O. Kay a certain note of $2,500, dated October 15, 1913, in favor of A. L. Ross, said $2,500 to be paid to A. L. Ross, and you will then credit said sum of $2,500 on the first above mentioned note of $5,000

as a payment on the principal thereof, and deliver said $5,000
note, bearing $2,500 indorsement, to G. C. De Garmo on Feb-
ruary 7, 1916; and in the event said draft is not paid you
will deliver said $5,000 note, without such indorsement of
$2,500, to G. A. De Garmo, and hold above-mentioned note of
$2,500 subject to the order of A. L. Ross.''

It is undisputed that the time for honoring the draft was
extended to February 10, 1916, by the consent of plaintiff;
that the draft after being sent to the Utah State National
Bank instead of the National Bank of the Republic, contrary
to defendants' instructions, on its belated arrival in Salt Lake
City, February 7th, was immediately honored and paid by
defendants; that on the same day a letter was mailed by de-
fendants so advising the trust company; but that notwith-
standing the trust company had received the defendants' let-
ter advising payment it delivered the $5,000 note out of the
escrow without indorsement of $2,500 credit, on the demand
of the plaintiff made on February 11. The plaintiff thereafter
refused to return the note to the escrow or to permit a credit
indorsement thereon of the $2,500, claiming ever since to be
the rightful holder of the note sued upon in this action.
The plaintiff's thus holding the note is not only without
delivery and in violation of contract, but, we think, under
all the circumstances, wrongful and in contravention of every
principle of moral right and fair dealing. *Union Trust Co.* v.
*Adams*, 54 Ind. App. 166, 101 N. E. 741; *Tovera* v. *Parker*, 35
Okl. 74, 128 Pac. 101; *Thornhill* v. *Olson*, 31 N. D. 81, 153 N.
W. 442, L. R. A. 1916A, 493, Ann. Cas. 1917E, 427; *Wick-
hizer* v. *Bolin*, 22 Ind. App. 1, 53 N. E. 238.

Nor do we think the plaintiff's claims as to his being the
legal owner and holder of the note sued upon in this action
are to be regarded with any more favor by reason of the con-
duct of the trust company in delivering the note out of escrow
to him under the attending circumstances. As we view the
acts of the trust company in that regard, they are, to say the
least, out of harmony with what its name to the business
world ordinarily signifies.

In sustaining the findings of the trial court, as we do, for

the reasons stated, it becomes wholly unnecessary to here review or discuss the other errors assigned by plaintiff, as it cannot well be contended, conceding them to be of merit, that they were prejudiced. Further, it may be understood that we are not here determining nor passing upon the rights of the respective parties with respect to any matter involved in their transactions other than the plaintiff's right to recover from the defendants at this time on the note sued upon in this action. As we view the record here, the judgment of the district court is determinative of no other matter.

The judgment of the district court is affirmed; respondents to recover costs.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.